In the Matter of ORANGE COUNTY PUBLICATIONS, DIVISION OF OTTAWAY NEWSPAPERS, INC., Appellant, v COUNCIL OF THE CITY OF NEWBURGH et al., Respondents.

Second Department, January 3, 1978

## APPEARANCES OF COUNSEL

*Becker, Card, Levy & Richards, P. C. (Rodney A. Richards* of counsel), for appellant.

*David F. Jordan, Corporation Counsel,* for respondents.

## OPINION OF THE COURT

RABIN, J.

The petitioner is the publisher of the *Times Herald Record* (the *Record),* a daily newspaper having a general circulation in excess of 53,000 throughout several counties, including Orange County. Reporters for the *Record* regularly attend meetings of the Council of the City of Newburgh and the Zoning Board of Appeals of the City of Newburgh. The council's meetings have been held on a regular basis on the second and fourth Monday of each month and the zoning board's meetings have traditionally been held on the fourth Tuesday of each month.

According to respondents, the members of the Council of the City of Newburgh gather informally in the City Manager's office to discuss any topic of interest four days prior to each regular meeting. No action is taken by the council at that time. They characterize such meetings as "work sessions" and exclude the public.

The council's first "work session" of 1977 was held on

Monday, January 3, at the City Hall, in the City Manager's office. Advance notice of the meeting had not been given to the public or mass media. The *Record* learned the time and place of the meeting, and that its purpose was to consider problems of urban renewal in the city's waterfront area. Two employees of the *Record* attempted to attend that meeting. The members of the council ordered the reporters to leave, taking the position that meetings were required to be open to the public only in the event a formal vote on government business was to be taken, and that in this case the council did not plan to take such a vote.

■ ■ Petitioner commenced this article 78 proceeding seeking a judgment declaring, *inter alia,* that the word "meeting" within the meaning of the Open Meetings Law (Public Officers Law, art 7 [L 1976, ch 511, § 1, eff Jan. 1, 1977]) includes the gathering or meeting of a public body whenever a quorum is present for the purpose of transacting public business, whether or not a vote of the members of the public body is taken. Special Term deemed this to be an action for declaratory relief and declared that the provisions of section 93 (now renumbered § 98) of the Public Officers Law do not apply to informal meetings of the City Council of the City of Newburgh which are not convened for the purpose of transacting public business officially. Petitioner contends that Special Term erred in so holding. We agree.

We are called upon to determine whether the "work session" of the respondent council from which the petitioner's reporters were barred was a meeting within the meaning of subdivision 1 of section 97 of the Public Officers Law. We begin by examining the current enactment for the statute's objectives and for the functional character of the meetings to which the Legislature intended it to apply. At the outset, the Open Meetings Law expresses its intent through a legislative declaration: "It is essential to the maintenance of a democratic society that the public business be performed in an open and public manner and that the citizens of this state be fully aware of and able to observe the performance of public officials and attend and listen to the deliberations and decisions that go into the making of public policy. The people must be able to remain informed if they are to retain control over those who are their public servants. It is the only climate under which the commonweal will prosper and enable the governmental process to operate for the benefit of those who

created it" (Public Officers Law, § 95). In other words, public business is the people's business and the people have a right to know.

The Open Meetings Law further provides, in pertinent part:

"§ 96. Short title. This article shall be known and may be cited as 'Open Meetings Law'.

"§ 97. Definitions. As used in this article: 1. 'Meeting' means the formal convening of a public body for the purpose of officially transacting public business.

"2. 'Public body' means any entity, for which a quorum is required in order to transact public business and which consists of two or more members, performing a governmental function for the state or for an agency or department thereof, or for a public corporation as defined in section sixty-six of the general construction law.

"3. 'Executive session' means that portion of a meeting not open to the general public.

"§ 98. Open meetings and executive session. (a) Every meeting of a public body shall be open to the general public, except that an executive session of such body may be called and business transacted thereat in accordance with section ninety-five[1] of this article.

\* \* \*

"§ 100. Conduct of executive sessions. 1. Upon a majority vote of its total membership, taken in an open meeting pursuant to a motion identifying the general area or areas of the subject or subjects to be considered, a public body may conduct an executive session for the below enumerated purposes only, provided, however, that no action by formal vote shall be taken to appropriate public moneys:

"a. matters which will imperil the public safety if disclosed;

"b. any matter which may disclose the identity of a law enforcement agent or informer;

"c. information relating to current or future investigation or prosecution of a criminal offense which would imperil effective law enforcement if disclosed;

"d. discussions regarding proposed, pending or current litigation;

---

1. In renumbering the sections of the Open Meetings Law (L 1977, ch 933, § 2), the Legislature inadvertently neglected to renumber this reference, which should be to section 100.

"e. collective negotiations pursuant to article fourteen of the civil service law;

"f. the medical, financial, credit or employment history of any person or corporation, or matters leading to the appointment, employment, promotion, demotion, discipline, suspension, dismissal or removal of any person or corporation;

"g. the preparation, grading or administration of examinations; and

"h. the proposed acquisition, sale or lease of real property, but only when publicity would substantially affect the value of the property.

"2. Attendance at an executive session shall be permitted to any member of the public body and any other persons authorized by the public body."

The remaining provisions of the law require, *inter alia,* that notice to the public be given (§ 99); that minutes be taken and made available to the public (§ 101); and that any action taken in violation of the statute, "upon good cause shown", may be declared void in whole or in part (§ 102). As noted, a limiting feature of the law permits executive sessions wherein specifically enumerated subjects which may affect public safety, law enforcement, litigation, collective bargaining negotiations, personnel matters, examinations and land speculation may be considered (§ 100). The meetings we are here concerned with concededly were not executive sessions.

Under subdivision 1 of section 97 of the Public Officers Law, the word "meeting" is defined as "the formal convening of a public body for the purpose of officially transacting public business." This definition contains several words of limitation such as "public body", "formal convening" and "officially transacting public business". Special Term construed these terms to mean that one of the minimum criteria for a meeting would include the intent to adopt, then and there, measures dealing with the official business of the governmental unit. Unfortunately this narrow view has been used by public bodies as a means of circumventing the Open Meetings Law. Certain practices have been adopted whereby public bodies meet as a body in closed "work sessions", "agenda sessions", "conferences", "organizational meetings", and the like, during which public business is discussed, but without the taking of any action. Thus, the deliberative process which is at the core of the Open Meetings Law is not available for public scrutiny (see First Annual Report to the Legislature on the Open

Meetings Law, Committee on Public Access to Records, Feb. 1, 1977).[2]

We believe that the Legislature intended to include more than the mere formal act of voting or the formal execution of an official document. Every step of the decision-making process, including the decision itself, is a necessary preliminary to formal action. Formal acts have always been matters of public record and the public has always been made aware of how its officials have voted on an issue. There would be no need for this law if this was all the Legislature intended. Obviously, every thought, as well as every affirmative act of a public official as it relates to and is within the scope of one's official duties is a matter of public concern. It is the entire decision-making process that the Legislature intended to affect by the enactment of this statute.

It is not difficult to see how this conclusion is reached. A public body is an entity for which a quorum consisting of two or more members is required to transact public business (Public Officers Law, § 97, subd 2). Section 41 of the General Construction Law defines the requirement of a quorum in terms of the performance of a public duty. We can therefore equate the performance of a public duty with the transaction of public business.

The dictionary meaning of the word "transact" is to "carry on business" (Webster's Third New Int Dictionary). The phrase "officially transacting public business", therefore, when read in conjunction with the Open Meetings Law's legislative declaration, contemplates a broad view extending not only to the taking of an official vote, but also to peripheral discussions surrounding the vote (see Transcript of the Assembly Debate, Assembly Bill 7501-B, May 20, 1976, pp 6267-6268).

The word "formal" is defined merely as "following or according with established form, custom, or rule" (Webster's Third New Int Dictionary). We believe that it was inserted to safeguard the rights of members of a public body to engage in ordinary social transactions, but not to permit the use of this safeguard as a vehicle by which it precludes the application of the law to gatherings which have as their true purpose the discussion of the business of a public body or matters pending before a public body.

---

2. Section 104 of the Public Officers Law requires the filing of a report not later than February 1 of each year to the Legislature by the Committee on Public Access to Records reviewing the implementation and operation of the Open Meetings Law and making recommendations as that committee deems advisable.

The clear implication then of these phrases of limitation, in the light of the other requirements of the Open Meetings Law, is that they connote a gathering, by a quorum, on notice, at a designated time and place, where public business is not only voted upon but also discussed. These meetings, regardless of how denominated; come within the tenor and spirit of the Open Meetings Law and should be open to the public.

By analogy to the original Florida Sunshine Law (Fla Stat Ann, § 165.22), Special Term concluded that the Legislature intended to limit the application of the New York statute to regular or formal meetings only, based upon the Florida court's interpretation of its Open Meetings Law as found in *Turk v Richard* (47 So 2d 543 [Fla]). There the court held that the phrase "all meetings" referred only to formal assemblages of a municipal council sitting as a joint deliberative body for the purpose of transacting official municipal business. Special Term opined that, notwithstanding a subsequent amendment to the Florida statute in 1967 (Fla Stat Ann, § 286.011) to change the result of *Turk* and to broaden the scope of the statute to include nonformal meetings (see *City of Miami Beach v Berns,* 231 So 2d 847 [Fla]), since the New York Legislature incorporated language similar to that used by the Florida court in *Turk,* a narrow application should be afforded the New York statute. However, Special Term's reliance is misplaced. Absent from the Florida statute, but included in our own, is the declaration of legislative intent enabling an interpretation and application most favorable for its intended beneficiary—the public.[3]

We agree that not every assembling of the members of a public body was intended to be included within the definition. Clearly casual encounters by members do not fall within the open meetings statutes. But an informal "conference" or "agenda session" does, for it permits "the crystallization of secret decisions to a point just short of ceremonial acceptance" (Adkins, Government in the Sunshine, Federal Bar News, vol 22, No. 11, p 317).

---

3. A comparison with the California Open Meetings Law (Cal Government Code, § 54953) is more appropriate. There the courts had a statement of legislative purpose similar to our own, declaring how essential it is that citizens be able to attend and listen to the deliberations and the decisions that go into the formulation of public policy. As interpreted by *Sacramento Newspaper Guild v Sacramento County Bd. of Supervisors* (69 Cal Rptr 480), it was held that any gathering, formal or not, is considered a meeting within the scope of its Open Meetings Law if public business is discussed.

In further support of the fact that the Open Meetings Law was intended to apply to all discussions by a public body of matters pending before it, we need only look to the provisions made for executive sessions (Public Officers Law, § 100). Common sense alone dictates that the provisions for executive sessions are meaningless, or at best superfluous, if a public body can hold a "work session" without paying heed to the Open Meetings Law. If the legislative intent was to permit public bodies to convene at gatherings that they themselves interpreted to be informal, during which they would discuss the business of the public body, then the New York State Legislature would not have provided for executive sessions. The very mechanism for an executive session, in and of itself, suggests that the Legislature wanted to provide for the possibility of a private working session in the absence of the public eye, but only under the express conditions and enumerated purposes contained therein.

Petitioner also asks for a declaration that the term "judicial or quasi-judicial proceedings", within the meaning of the Open Meetings Law, does not apply to meetings or proceedings of the Newburgh City Council or the Newburgh Zoning Board of Appeals. Section 103 of the Public Officers Law provides, in pertinent part: "Nothing contained in this article shall be construed as extending the provisions hereof to: 1. judicial or quasi-judicial proceedings".

On January 25, 1977 the Zoning Board of Appeals held its regularly scheduled meeting. The purpose of the meeting was to consider requests for two zoning variances in the City of Newburgh. The *Record* sent a reporter to cover that meeting. He was permitted to listen to the presentations made for the zoning variances, but was ordered to leave the meeting when the board convened for the purposes of deliberating and making its decision. The members of the board took the position that this aspect of the Zoning Board of Appeals' meeting was quasi-judicial and therefore exempt from the mandates of the Open Meetings Law pursuant to subdivision 1 of section 103.

Special Term declared that the Board of Zoning Appeals could conduct its deliberations in private, but that the part of its proceedings in which its decision is announced, and at which the vote of the individual members is taken, must be open to the public, as must all its other regular proceedings.

Petitioner urges that the "meetings" of the Newburgh

Zoning Board of Appeals are not judicial in nature, and are entirely subject, therefore, to the provisions of the Open Meetings Law. We agree with Special Term that there is a distinction between that portion of a meeting of the zoning board wherein the members collectively weigh evidence taken during a public hearing, apply the law and reach a conclusion and that part of its proceedings in which its decision is announced, the vote of its members taken and all of its other regular business is conducted. The latter is clearly nonjudicial and must be open to the public, while the former is indeed judicial in nature, as it affects the rights and liabilities of individuals (see *Matter of Hecht v Monaghan,* 307 NY 461; see, also, *Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor,* 40 NY2d 158). Accordingly, pursuant to subdivision 1 of section 103 of the Public Officers Law, the deliberations of the Newburgh Board of Zoning Appeals as to the zoning variances are not subject to the Open Meetings Law.

It is clear that there is a pervasive tendency for our public officials to attempt to function in secrecy (see Note, Access to Official Information: A Neglected Constitutional Right, 27 Ind LJ 209). The Federal Government has adopted the Freedom of Information Act (US Code, tit 5, § 552, as amd by PL 93-502, §§ 1-3 [Nov. 21, 1974]), which purports to prevent such secrecy by granting access to government records. On the State level, "sunshine" laws have been enacted to expose and lay bare the decision-making process of governmental bodies.[4] New York is apparently one of the last to join its sister States in passing a specific Open Meetings Law, although various other statutes in New York contain "open vote" provisions (see, e.g., Village Law, § 7-712; County Law, § 152, subd 3; Town Law, § 267, subd 1; Education Law, § 1708, subd 3).

The Open Meetings Law was obviously designed to assure the public's right to be informed. Accordingly, any private or secret meetings or assemblages of the Council of the City of Newburgh, when a quorum of its members is present and when the topics for discussion and eventual decision are such as would otherwise arise at a regular meeting, are a violation of the New York Open Meetings Law.

■ ■ The judgment should be modified by striking there-

---

4. See, e.g., Del Code Ann, tit 29, §§ 10001-10005 (Supp 1976); Mich Compiled Laws Ann, §§ 15.261 to 15.273 (Supp 1977); NJ Stat Ann, §§ 10:4-7; 10:4-8; 10:4-12; 10:4-15; and SC Code Ann, tit 30, §§ 3-10 to 3-40, subds (a), (b) (Supp 1977).

from the declaration that the provisions of section 93 (now renumbered 98) of the Public Officers Law do not apply to informal meetings of the City Council of the City of Newburgh which are not convened for the purpose of transacting public business officially and substituting therefor the declaration that the word "meeting", as set forth in section 98 of the Public Officers Law, includes the gathering or meeting of a public body for the purpose of transacting public business, whenever a quorum is present, whether or not a vote of members of the public body is taken. As so modified, the judgment should otherwise be affirmed.

HOPKINS, J. P., LATHAM and MARGETT, JJ., concur.

Judgment of the Supreme Court, Orange County, dated April 26, 1977, modified, on the law, by deleting the second decretal paragraph thereof and substituting therefor a declaration that the word "meeting" as set forth in section 98 of the Public Officers Law includes the gathering or meeting of a public body for the purpose of transacting business, whenever a quorum is present, whether or not a vote of the members of the public body is to be taken. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements.