OPINION OF THE COURT
Raymond L. Wilkes, J.
Who would have thought but a few short years ago that in a society such as ours with its sensitive outlook upon life and its constant conception of social needs, that budgets of all things could become the stuff of which divisiveness is made? But that —in the patois of the day — is the way it is. Suffice it to say then, that this is an application by the petitioners pursuant to article 78 for a declaration to the effect:
1. that the adoption on December 18, 1978 of the 1979 Nassau County budget was in violation of article III of the *677 County Government Law of Nassau County (L 1936, ch 879, as amd);
2. that meetings held by the respondents concerning the Nassau County budget of 1979 were illegal and in violation of sections 95 through 106 of the Public Officers Law;
3. that the actions of the respondents render the Nassau County budget as adopted on December 18, 1978 by the board of supervisors null and void;
4. that the respondents be directed to comply with the public notice and public hearing provisions of section 305 of the County Government Law prior to the adoption of the budget for Nassau County’s fiscal year 1979;
5. that the respondents be directed to comply with the Public Officers Law;
6. that there be no expenditure or collection of funds with respect to or arising out of the operation of Nassau County during 1979, except to the extent that there are funds on hand carried over from revenues received for the fiscal year 1978, until such time as the respondents comply with section 305 of the County Government Law and sections 95 through 106 of the Public Officers Law; and
7. to award to petitioners their costs related to this proceeding.
The County Law referred to by the petitioners is the County Government Law of Nassau County enacted in 1936, which the court will refer to as the Charter. The so-called Open Meetings Law was enacted by the Legislature of the State of New York and comprises sections 95 through 106 of the Public Officers Law. It will be referred to herein as the Open Meetings Law.
The petitioners’ allegations may be crystallized as follows:
The conduct and actions of the respondents (board of supervisors) from November 13, 1978, when the County Executive submitted his proposed budget until December 18, 1978 when the respondents approved their modified version of the budget, were violative of the mandates and requirements of section 305 of the Charter and the Open Meetings Law. Section 102 of the Public Officers Law provides that an aggrieved person may commence "a proceeding pursuant to article seventy-eight of the civil practice law and rules, and/or an action for declaratory judgment and injunctive relief. In any such action or proceeding, the court shall have the power, in its discretion, *678 upon good cause shown, to declare any action or part thereof taken in violation of this article void in whole or in part.”
The respondents do not challenge the standing of the petitioners as aggrieved parties or the utilization of a CPLR article 78 proceeding to enforce the alleged violation of the Open Meetings Law in view of the clear language quoted above. However, they have raised a jurisdictional objection to the authority of the court to review the actions of a legislative body upon a basis other than the Open Meetings Law by meas of an CPLR article 78 proceeding.
The cases are legion in support of the view that courts generally are without authority to review legislative determinations. However, the petitioners do not seek a review but rather assume the posture that the budget must be declared void for failure of the respondents to comply with section 305 of the Charter requirements of public notice and public hearing. The petitioners contend that noncompliance with section 305 can be enforced pursuant to a CPLR article 78 proceeding. The requirements of section 305 are mandatory, not discretionary — ministerial, not judgmental. The application of CPLR article 78 in this instance does not expand the scope of CPLR article 78. It merely asks that a legislative body follow statutorily required procedures prior to the exercise of its legislative function. Although CPLR article 78 is not available to compel the Legislature to legislate, it may be utilized to compel such a body to do an act required by law. After a review of the cases cited by the respondents on this point, and finding them readily distinguishable upon the facts and the law from the case at bar, the court hereby denies the respondents’ jurisdictional attack upon this application.
This matter was originally argued before the court on December 22, 1978 after which an evidentiary hearing was held on December 26, 1978 at which, time the respondents were directed to submit a transcript of the relevant portions of the board of supervisors’ meeting of December 18, 1978 as well as copies of the originally proposed and ultimately adopted budgets. During that hearing, the petitioners called Presiding Supervisor Alphonse D’Amato as their sole witness and are therefore bound by his testimony as a matter of law. As part of its findings herein, the court will capsulize the testimony of Mr. D’Amato relative to the events between November 13, 1978 and December 18, 1978 bearing upon the *679 budget process insofar as it relates to the factual issues raised by the petitioners.
The following constitutes the court’s findings of fact and conclusions of law pursuant to CPLR 4213.
The County Executive of Nassau County filed a proposed budget for the fiscal year 1979 on November 13, 1978. Copies of that proposed budget were forwarded to all members of the board of supervisors on either the 13th or 14th of November. During the week of November 13, the board did not gather collectively in order to discuss the budget and Mr. D’Amato met with his staff on November 13, or November 14, in order to prepare and develop a new budget. Although it appears that the board did not meet to discuss the budget during the week of November 20, there were open meetings at which department heads rendered reports with regard to possible savings and expenses in their respective departments. At 8:00 p.m. on November 29, a scheduled public hearing was held on the County Executive’s budget as required by the Charter.
On November 29, 1978, after an afternoon open meeting of the board of supervisors, and prior to the evening public hearing, the board members dined at Westbury Manor. This was principally a social get-together, although there was some discussion about reports from the department heads.
Mr. D’Amato had no recollection of any meetings with board members on November 30, or December 1, although his staff had been given a high priority obligation to draft a new budget.
December 4, 1978 was a regularly scheduled board meeting open to the public during the course of which the board members received "studies” of figures.
On December 13, 1978, the board and the staff had an impromptu luncheon during the course of which the staff reported on their progress toward developing a new budget. Supervisor Bennett arrived late and Supervisor Colby left early. This luncheon was preceded by a public hearing on December 13, held pursuant to public notice given on December 6, and December 7, 1978.
During the early morning hours of December 18, the supervisors by prearrangement stopped by at Hempstead Town Hall in order to pick up their respective copies of certain work sheets prepared by staff which reflected increases in expected *680 revenue as well as decreases in expenditures when compared with the County Executive’s proposed budget.
Mr. D’Amato testified that the only times the board had gathered other than at open and public hearings was at the dinner of November 29, 1978, the luncheon of December 13, 1978 and the morning of December 18, 1978 at Hempstead Town Hall for the pick up of the work sheets.
The board of supervisors’ budget was ultimately adopted on December 18, 1978 at the regularly scheduled board meeting of that day.
It was not lost upon the court that the principal protagonists during the hearing, namely, Messrs. Peirez and D’Amato, expressed most warm regard for each other’s probity.
The Appellate Division, Second Department, decided in Matter of Orange County Pub., Div. of Ottaway Newspapers v Council of City of Newburgh (60 AD2d 409, 412) "that the word 'meeting’ within the meaning of the Open Meetings Law (Public Officers Law, art 7 [L 1976, ch 511, § 1, eff Jan. 1, 1977]) includes the gathering or meeting of a public body whenever a quorum is present for the purpose of transacting public business, whether or not a vote of the members of the public body is taken.” Continuing (supra, p 415) "Every step of the decision-making process, including the decision itself, is a necessary preliminary to formal action.”
Mr. D’Amato described the dinner gathering on November 29, 1978 as a social gathering, and said that any discussion of the budget was incidental to general social intercourse between elected officials who have known each other and worked with each other for years. The petitioners have simply failed to establish by a fair preponderance of the credible evidence that this dinner, sandwiched between two open and public meetings, was in violation of the Open Meetings Law.
Mr. D’Amato further testified that the gathering during the early morning of December 18, 1978 at Hempstead Town Hall was merely to enable board members to pick up the work sheets which they would require for the board meeting later that day. It appeared that these work sheets as well as the revised budget were not completed until that very morning. Here again, the petitioners have failed to sustain their burden of establishing that this gathering was in violation of the Open Meetings Law.
The luncheon gathering of December 13, 1978, however, was *681 in some respects quite a different cup of tea. Staff reported on progress in cutting expenses and increasing anticipated income, and although there were some questions from the board members present addressed to staff, no actual discussion by the board took place. Mr. D’Amato’s recollection of this luncheon was not contradicted in whole or in part by any other board member despite disparities in political persuasion.
The Appellate Division in Matter of Orange County Pub., Div. of Ottaway Newspapers v Council of City of Newburgh (60 AD2d 409, 416, supra) concluded "that not every assembling of the members of a public body was intended to be included within the definition. Clearly casual encounters by members do not fall within the open meetings statutes. But, an informal 'conference’ or 'agenda session’ does, for it permits 'the crystallization of secret decisions to a point just short of ceremonial acceptance’ (Adkins, Government in the Sunshine, Federal Bar News, vol 22, No. 11, 317).”
In addition, this court in Matter of Kamlet v Board of Educ. (91 Mise 2d 1105) concluded that planning sessions wherein oral reports were received from employees of the school system as well as prospective contractors were governed by the Open Meetings Law.
In keeping with the foregoing, this court holds that the luncheon gathering, although informal in nature and impromptu in planning, represented an assemblage of a legislative body for a particular business purpose, but in this instance was, at worst, merely a technical violation of the Open Meetings Law.
As recently held by the Court of Appeals on December 6, 1978 in Matter of New York Univ. v Whalen (46 NY2d 734, 735):
"It is the policy of this State as expressed in its 'Open Meetings Law’ (Public Officers Law, §§ 95-106) that 'public business be performed in an open and public manner and that the citizens of this state be fully aware of and able to observe the performance of public officials and attend and listen to the deliberations and decisions that go into the making of public policy.’ (§ 95.) In furtherance of this objective of public accountability, courts are empowered, in their discretion and upon good cause shown, to declare void any action taken by a public body in violation of the mandate of this legislation. (§ 102.) Inclusion by the Legislature of this language vesting in the courts the discretion to grant remedial relief makes it *682 abundantly clear that not every breach of the 'Open Meetings Law’ automatically triggers its enforcement sanctions. (See, generally, Comment, New York Open Meetings Law: A Critical Evaluation, 41 Albany L Rev 329, 353-354.)
"Judicial relief is warranted only upon a showing of good cause. (§ 102, subd 1.) Since appellants have failed to meet this burden, their petition was properly dismissed.”
A similar conclusion was reached in Matter of MFY Legal Servs. v Toia (93 Misc 2d 147).
The court holds that the petitioners have failed to demonstrate during this hearing either sufficient "prejudice” (Toia, supra) or in the language of the Court of Appeals (Whalen, supra) "good cause shown” which would serve to warrant the extreme remedy of invalidating the entire Nassau County budget predicated upon what it regards — after a full hearing —to be an isolated technical violation of the Open Meetings Law. To "trigger” severe enforcement sanctions predicated upon so insignificant a base would not, in the considered view of this court, be a sound exercise of its judicial discretion.
The petitioners further urge upon the court that the respondents have violated section 305 of the Charter which provides as follows: "§ 305. Changes in budget. After the conclusion of such hearing, the board of supervisors may strike out or reduce any item of appropriation in the county budget. Before, however, inserting any additional item or increasing any item of appropriation, the board of supervisors must publish, at least twice in the official newspapers, a notice setting forth the nature of the proposed changes in the budget and fixing the time, not less than five days after the second publication, at which they will hold a public hearing thereon. After such hearing, which may be adjourned from day to day, the board of supervisors may insert the additional item or items and make the increase or increases to the amount in each case indicated by the published notice or to a lesser amount.”
The petitioners’ principal thrust in this regard is the premise that any increase in anticipated "revenue” requires public notice as well as public hearing. They contend that "revenue” is encompassed within the frame of "appropriation”. However, section 305 clearly provides for public notice and hearing only when the board is considering an increase in "any item of appropriation. (Emphasis added.)”
*683 Webster’s Third New International Dictionary (1971) contains the following definitions:
"Appropriation — The act of appropriating to oneself or another person or to a particular use — something that has been appropriated — specifically a sum of money set aside or alloted by official or formal action for a specific use (as from public revenue by a legislative body that stipulates the amount, manner and purpose of items of expenditure).
"Appropriate — To claim as use as if by an exclusive or preeminent right — to seize or take over.
"Revenue — The annual or periodical yield of taxes, excises, customs, duties and other sources of income that a nation, state or municipality collects and receives into the treasury for public use: public income of whatever kind.”
Black’s Law Dictionary (rev 4th ed, 1968) defines:
"Appropriation. The act of appropriating or setting apart; prescribing the destination of a thing; designating the use or application of a fund * * *
"Public Law. The act by which the legislative department of government designates a particular fund, or sets apart a specified portion of the public revenue or of the money in the public treasury, to be applied to some general object of governmental expenditure, or to some individual purchase or expense * * *
"An element of the definition of 'appropriation’ is that the money appropriated be out of the general revenues of the state.
"Appropriate * * * To prescribe a particular use for particular moneys.
"Revenue * * * As applied to the income of a government, a broad and general term, including all public moneys which the state collects and receives, from whatever source and in whatever manner.”
In support of their claim of noncompliance by the board with section 305 of the Charter, the petitioners direct the attention of the court to People v Tremaine (281 NY 1); Matter of Block v Sprague (285 NY 69); and Matter of Ratner v Michaels (12 Misc 2d 165) which they contend support the premise that "appropriation” as utilized in section 305 includes "revenue”.
The board of supervisors’ budget as passed on December 18, 1978 reflected a $14,000,000 reduction in expenditures and a *684 $12,000,000 increase in anticipated revenue when compared with the figures contained in the budget submitted by the County Executive.
The petitioners have raised no issue with respect to the $14,000,000 reduction in expenditures and have confined themselves to an attack upon the $12,000,000 in increased anticipated "revenue” which they allege warrants public notice and hearing.
The court wishes to note in passing that it has examined the budget in question and has noted that the items of anticipated "increased revenue” comprising the gravamen of petitioners’ attack, constitute but a modest percentage of the total budget of $828,428,763.
People v Tremaine (supra) required the Court of Appeals to determine the extent to which itemization was required in an appropriation bill. At no point in that decision is there a discussion of "revenue” or support for the petitioners’ contention that the word "revenue” is included within the term "appropriation.” In fact, Chief Judge Crane at the onset of his decision (supra, p 4), refers to article VII of the New York State Constitution and its "clear and distinct plan for appropriation bills.” (Emphasis added.) Section 7 of article VII (appropriation bills) reads as follows: "No money shall ever be paid out of the state treasury or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law”.
Matter of Block v Sprague (supra) relies upon People v Tremain (supra) to conclude that article 3 of the County Government Law (the article before this court) requires line-by-line itemization in the budget wherever practicable. There again, the attention of the court was focused upon "expenditures” — and the linkage of "appropriation” and "revenue” relied upon by the petitioners is simply not present.
In Matter of Ratner v Michaels (supra) the Supreme Court of Sullivan County determined that the Sheriff was limited to the number of regular deputy sheriffs permitted by his budgetary allotment. The petitioners herein contend that the following words from Justice Taylor’s opinion (supra, p 166), namely, that "[t]he word 'appropriation’ patently relates to the budget as finally adopted by the board of supervisors (County Law, § 360) and not to the initial estimate submitted to its budget officer” is helpful to their cause. However, the petitioners’ expectations are beyond fulfillment. The foregoing *685 quotation is self-explanatory and does not support the inclusion of the word "revenue” within the framework of "appropriation”.
Black’s Law Dictionary defines expenditure as "[a]n expending, a laying out of money; disbursement; — it is not the same as an 'appropriation’, the setting apart or assignment to a particular person or use, in exclusion of all others.” This definition is helpful in achieving an understanding of the statutory scheme of article III of the Charter which provides a format whereby the County Executive submits a proposed budget of revenue and expenditures (§ 302); which is then the subject matter of a hearing (§ 304); and it is finally left to the board of supervisors to "appropriate” the funds anticipated (§ 305). Should a transfer of appropriation or supplemental appropriation be required, the procedure therefor is provided for in section 307, i.e., the County Executive’s proposed "expenditures” are gradually converted by the legislative process into the board’s "appropriations”. It constitutes virtually a classic example of the separation of powers whereby the executive proposes "expenditures” and the Legislature disposes via "appropriations”.
In a like spirit of power separation, it behooves the judiciary to act with becoming self-restraint before it presumes to supersede the plainly expressed intent of the legislative branch. Indeed, in this vein, our most recently retired Chief Judge of the Court of Appeals, the Hon. Charles D. Breitel, was moved to say (as appears in the New York Times of Dec. 31, 1978) in a 1965 lecture which has been widely reprinted and quoted: "The power of the courts is great indeed but it is not a power to be confused with evangelic illusions of legislative or political primacy. If this is true, then self-restraint by the courts in lawmaking must be their greatest contribution to the democratic society.”
This court concludes that the words "increasing any item of appropriation” in section 305 do not include within their ambit increases of anticipated "revenue”.
The court cannot, however, terminate its inquiry here. Since the petitioners have pressed for an expansion of the meaning of the word "appropriation”, the court must of necessity consider section 305 of the Charter in its entirety and, if possible, divine the intention of its draftsmen. The initial part of that section authorizes the board to "strike out or reduce any item of appropriation”, without the need for further *686 public hearings. However, the second portion thereof requires public notice and public hearing prior to any action by the board "inserting any additional item or increasing any item of appropriation”. It is all too manifest that the words "inserting any additional item or increasing any item of appropriation” are not merely stylistic in tone but rather are substantive in content and represent the pointed expression of a legislative intent to confine the need for notice and hearings to items of "appropriation” alone.
The language of section 305 of the Charter is unmistakably clear. It mandates both public notice and hearings when the board contemplates any additional item of "appropriation” or increasing any item of "appropriation”. However, it speaks with stunningly silent eloquence by omitting any requirement of whatsoever kind or nature for public notice and hearings relative to "revenues” — and silence has many presumptively proper motivations. It is not for this court to supply a legislative void if indeed there be one — it is for the court to interpret and suggest, not to initiate legislation. In that vein, it is perhaps high time (since the Charter was enacted in the halcyon days of 1936) for the Legislature to consider the advisability of requiring both public notice and hearings prior to budgetary changes of anticipated "revenue” as well as "appropriation”.
As the statute (§ 305) presently stands, there are no gaps to be filled — no doubts and ambiguities to be cleared — no wrongs to be mitigated. Indeed, there is nothing which has been presented to this court by the petitioners which lends itself to a contrary conclusion.
Upon the subject of restraint, Judge Cardozo was moved to say in The Nature of the Judicial Process (Selected Writings of Benjamin Nathan Cardozo, pp 107, 110): "Where does the judge find the law which he embodies in his judgment? There are times when the source is obvious. The rule that fits the case may be supplied by the constitution or by statute. If that is so, the judge looks no farther. The correspondence ascertained, his duty is to obey. The constitution overrides a statute, but a statute, if consistent with the constitution overrides the law of judges. In this sense, judge-made law is secondary and subordinate to the law that is made by legislators.”
A statute standing by itself is not possessed of a thaumaturgic quality, nor is it encircled with a nimbus precluding the *687 questing process. However, when it speaks with total clarity about one thing and is thunderously silent about others, it is entitled to judicial respect as well as decisional restraint. Statutes are to be interpreted so as to fulfill policies which the Legislature had in mind (see 56 NY Jur, Statutes, § 169).
Accordingly, in view of the foregoing, this petition is in all respects dismissed.