OPINION OF THE COURT
James H. Boomer, J.
Traditionally the members of the majority political party of local legislative bodies have met in closed session to discuss matters that were to come before those bodies at their public meetings. The Rochester City Council has long followed this tradition. At issue in this CPLR article 78 proceeding is whether this practice violates the Open Meetings Law (Public Officers Law, art 7, eff Jan. 1,1977).
Currently the Rochester City Council consists of eight members of the Democratic Party and one member of the Republican Party. On most Thursday afternoons the Democratic members of the council meet in the Mayor’s office at the invitation of the Mayor and there they receive information about and discuss matters relating to government affairs that are likely to come before the city council. As a result of the discussions, decisions are reached to include or not to include certain items on the agenda of the public meeting. Often invited to and attending these meetings are the city manager, *1023 the city clerk, and other members of the city’s administration staff.* Reporters, the minority members of the city council, and the public are excluded from these meetings.
The petitioner in the first proceeding is Anthony Sciolino, the Republican member of the city council, ánd the petitioners in the second proceeding are newspaper reporters who were denied entrance to the closed meetings. In both actions the petitioners seek an order of the court (1) declaring that the closed meetings held by the Democrat majority of the city council are public meetings within the meaning of the Open Meetings Law and that practice of excluding the public and members of the press from those meetings is illegal, and (2) ordering the majority members to admit the petitioners and the public to those meetings.
The Open Meetings Law provides that "Every meeting of a public body shall be open to the general public” (Public Officers Law, § 98). The word "meeting” means "the official convening of a public body for the purpose of conducting public business.” "Public body” means "any entity, for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function * * * or committee or subcommittee or other similar body of such public body.” (Public Officers Law, § 97.)
Exempt from the operation of the law are "deliberations of political committees, conferences and caucuses”. (Public Officers Law, § 103.)
The Democrat members of the city council contend that their closed meetings are "political caucuses” and, therefore, these meetings are exempt from the requirements of the Open Meetings Law. The term "political caucuses” is not defined by statute.
The word "political” has at least two meanings: (1) In the broadest sense, pertaining to the conduct of government. (All governments are bodies politic.) (2) In a more restrictive sense, pertaining to the organization of individuals and parties who seek to control the apparatus of government, such as political *1024 parties. (Webster’s New Int Dictionary [2d ed]; see, also, Webster’s Third New Int Dictionary.)
The word "caucus” also has at least two meanings: (1) A meeting of the members of a legislative body belonging to the same political party to decide how they will vote upon any question to be voted upon by the body. (2) A meeting of the local members of a political party to nominate candidates for local office or to elect delegates to a meeting of the party. (Webster’s New Int Dictionary [2d ed]; see, also, Webster’s Third New Int Dictionary.)
The respondents contend that the word "caucus” must refer to a private meeting of the majority members of a legislative body to discuss matters that may come before the public meeting of the body and not to a political party caucus. This must be so, they reason, because a political party caucus does not conduct "public business” or perform a "governmental function” and, therefore, it does not fall within the definition of a "public body”. Since a political caucus is not within the definition of a public body to which the Open Meetings Law applies, it is unnecessary to exclude it by a specific exception.
While the reasoning has some merit and may supply some indication of the legislative intention, it is by no means conclusive. The exclusion of "political committees, conferences and caucuses” from the operation of the Open Meetings Law (Public Officers Law, § 103) was not couched in terms of an exception to something that was included in the first instance. The language used by the Legislature was; "Nothing contained in the article shall be construed as extending the provisions hereof to” (Public Officers Law, § 103; emphasis supplied). The exclusion of political caucuses might well have been inserted out of caution so that the courts would not have extended the construction of the term "public body” to "political caucuses”, not because the Legislature thought that term was included within the definition of "public body” and thus should be specifically excepted. Moreover, the term "political caucus” might well apply to members of a public body, when they meet to discuss "political” business in its narrow sense, such as the selection of candidates for public office, rather than public business.
For their interpretation of the legislative intention, the respondents also rely upon certain comments by one of the principal sponsors of the bill made during the debate on the bill in the State Assembly. This Assemblyman stated in re *1025 sponse to a question that a political caucus was not subject to the Open Meetings Law "on the basis of the fact that a political caucus does not transact public business.” (Transcript of Assembly Debate, Assembly Bill 7501-B, May 20, 1976, p 6269.) He gave the opinion that where the 'majority members of the House would be in so large a number that the majority party could meet in public caucus and constitute a quorum, this would not constitute a meeting of a public body because "there is no way that a caucus could be turned into a binding vote, and, therefore, it cannot officially transact public business.” (Transcript of Assembly Debate, p 6270.) This reasoning is consistent with the Assemblyman’s first concept of the meaning of the phrase "transact public business”. He stated that it "would be to the point that a binding vote would take place in order to bind the public body to some type of official action on behalf of the public.” (Transcript of Assembly Debate, p 6267.) But when questioned further about this he changed his opinion and stated "both deliberations, discussions and a binding vote” would constitute officially transacting business; that the phrase "extends to peripheral discussions surrounding the vote, the debate surrounding this.” (Transcript of Assembly Debate, pp 6267-6268.) Since the Assemblyman’s opinion, that deliberations of a political caucus would not constitute the official transaction of public business because they could not result in a binding vote, conflicts with his statement that the transacting of business encompasses not only voting but also deliberation, his statements cannot be considered as a persuasive indication of the intent of the legislative body. Moreover, he did not define what he meant by "political caucus”; he did not define it as a meeting of the majority to transact public business rather than strictly political business. A meeting of the majority members of the Legislature to discuss purely political matters such as campaign finances to elect or re-elect members of the party to the Legislature or to discuss party organization might be the type of "political caucus” the Legislature intended to exclude from the operation of the Open Meetings Law.
That the Legislature intended to include discussions of public business within the operation of the Open Meetings Law is clear from the amendment it made to the law in 1979 (L 1979, ch 704, § 1). By that amendment it changed the phrase "transacting public business” to "conducting public business” and it added to the definition of "public body” the *1026 phrase "committee or subcommittee” thereof. This amendment followed the decision in the case of Matter of Daily Gazette Co. v North Colonie Bd. of Educ. (67 AD2d 803) which held that because standing committees of a board of education were not empowered to "transact” business, the meetings of those committees were not subject to the requirements of the Open Meetings Law.
The most decisive indication of the legislative intention is the legislative declaration contained in section 95 of the law. That section states: "It is essential to the maintenance of a democratic society that the public business be performed in an open and public manner and that the citizens of this state be fully aware of and able to observe the performance of public officials and attend and listen to the deliberations and decisions that go into the making of public policy.” (Emphasis added.) Based primarily upon the legislative declaration, the courts held in Matter of Orange County Pub., Div. of Ottaway Newspapers v Council of City of Newburgh (60 AD2d 409, affd 45 NY2d 947) that the words "public meeting” within the meaning of the Open Meetings Law "includes the gathering or meeting of a public body whenever a quorum is present for the purpose of transacting public business, whether or not a vote of the members of the public body is taken” (Matter of Orange County Pub., Div. of Ottaway Newspapers v Council of City of Newburgh, supra, pp 412, 419); that it includes (p 414) informal "work sessions”, "agenda sessions” and "conferences”, "during which public business is discussed, but without the taking of any action”; that (p 414) "the deliberative process” is "at the core of the Open Meetings Law”; and that (p 418) "any private or secret meetings or assemblages of the Council * * * when a quorum of its members is present and when the topics for discussion and eventual decisions are such as would otherwise arise at a regular meeting, are a violation of the New York Open Meetings Law.”
Persuasive here, and particularly in point, is the opinion of the Executive Director of the Committee on Public Access to Records given in response to an inquiry by respondent Sciolino. By law this committee is directed to "issue advisory opinions as * * * may be required to inform public bodies and persons of the interpretations of the provisions of the open meetings law”. (Public Officers Law, § 104, subd 1.) The opinions of the committee should be followed if not unreasonable or irrational (Matter of Miracle Mile Assoc. v Yudelson, 68 *1027 AD2d 176, 181; Matter of Sheehan v City of Binghamton, 59 AD2d 808, 809). The opinion reads in part: "In my opinion, the key word in the exemptions quoted above is 'political’ and the key question is whether eight of the nine members gather for deliberation of a 'political’ nature or rather to 'conduct public business’ * * * From my perspective, the exemption is applicable when representatives of a single political party convene to discuss political party business. It is in my view questionable whether the meetings held by a majority of the City Council with the others who are invited may be considered 'political’ in nature”.
If the declared legislative purpose is to be carried out, the term "political caucus” must be construed to mean a meeting for the purpose of conducting purely "political”, as opposed to "public”, business. If we follow respondents’ contention that much public business has political implications, then there can be no distinction between the terms "political” and "public” as used in the Open Meetings Law. If the majority members of a public body could turn a "work” session or an "agenda” session into a political caucus by the simple expedient of excluding the minority members, then the declared purpose of the Legislature would be frustrated.
Judgment is granted declaring that the word "meeting”, as set forth in section 98 of the Public Officers Law, includes the gathering or meeting of a public body for the purpose of transacting public business whenever a quorum is present, whether or not a vote of members of the public body is taken and whether or not minority members of the council are excluded and further declaring that the exemption of a "political caucus” contained in section 103 of the Public Officers Law refers to meetings at which only political business and not public business is discussed and the term "conducting public business” within the meaning of the Open Meetings Law includes the discussion of any topics that may come before the body at a regular public meeting.
Judgment is also granted compelling the respondents to perform the mandatory duty of notifying the public and the respondent Anthony Sciolino of any and all meetings held for the purpose of conducting any public business and compelling the respondents to permit the public and the petitioner Anthony Sciolino to attend those meetings.
An explanation should be made about the procedure used here. On the return date, rather than submit an answer to the *1028 petition in this CPLR article 78 proceeding, the respondents made a motion to dismiss the petition on the ground that the petition failed to state a cause of action. However, in their affidavits in support of the motion to dismiss they admitted many of the facts contained in the petition and this judgment is based upon the facts conceded by the respondents. At the oral argument I stated that the issue involved appeared to be solely one of law, that is the meaning of the term "political caucus”, and that I might treat the affidavits submitted on the motion to dismiss as an answer and grant judgment on the undisputed facts without requiring an answer to be submitted. The attorneys for the respondents assented to this. I am of the opinion that the admitted facts are sufficient to resolve the issue of law presented by these proceedings and that no material issue of fact remains. If any party feels that there are disputed questions of fact that are material to the resolution of this proceeding and that they should be raised by way of an answer, I will entertain his motion to reargue. (See CPLR 7804, subds [a], [f]; 404, subd [a]; 3211, subd [c].)

 In the past Republican members of the council were in the majority and they too met in closed session prior to each public meeting. It is not for the court to express approval or disapproval of this practice for it is a matter solely within the control of the State Legislature. "The fact of the matter is that neither public nor private meetings of governmental bodies are inherently desirable or undesirable.” (Matter of Orange County Pub., Div. of Ottaway Newspapers v Council of City of Newburgh, 45 NY2d 947, 949.)