## CIRCUIT COURT OF ROANOKE COUNTY

WDBJ Television, Inc.

v.

Roanoke County Board of Supervisors

October 2, 1985

By JUDGE KENNETH E. TRABUE

WDBJ seeks to permanently enjoin Roanoke County Board of Supervisors from "conducting prearranged closed meetings to discuss communications or differences among Board members." Nowhere in the statute is there a *per se* prohibition against the members from discussing these things in a closed meeting. The evil sought to be avoided is a star chamber proceeding or secret meeting wherein debate takes place, specific topics relating to the "affairs of government" or to the "business of the public" are discussed, "action taken" or agreed to be taken, deals are made and cut, compromise is reached, and decisions made which affect the people.

Decisions made by government that affect the people take many forms. The decisions made by the Board of Supervisors which affect the citizens of the county are usually made by resolution, proclamation, ordinance, rule, contract, regulation, or motion adopted by vote in an open meeting. The vote taken then determines which action or inaction will follow on the topic or issue of business before the Board. It is these topics or issues put before the Board, either by the members themselves or by others, that constitute the business of the public with which the Board deals and which should be discussed and transacted in the sunshine.

The July 29, 1985, gathering was a "meeting" within the definition of Va. Code § 2.1-341 (1979). Even though the evidence is clear that the Board did not intend to

meet and to sit to act as a body or entity, nevertheless, it is evident and admitted that it was a prearranged assemblage of the five supervisors to meet with Dr. Donald P. Lacy for a workshop type presentation or training program on effective decision-making, improvements in communicative skills and how to conduct effective meetings.

This is not to say, however, that the meeting was unlawful. All meetings are to be "public" or "open" unless excepted by Va. Code § 2.1-344 (1979) or Va. Code Section 2.1-345 (1979) or unless "otherwise provided by law." The supervisors concede that the training session was not excepted by either Va. Code § 2.1-344 (1979) or Va. Code Section 2.1-345 (1979). They claim however that it was not an unlawful meeting or gathering because even though prearranged no part of it was for the purpose of discussing or transacting any business of the Board as a body or entity and in fact there was no intention to nor did the members of the Board discuss or transact any public business during the session. Once it is established that there was in fact a meeting and that it was not open to the public, then the supervisors have the burden of proving it was not unlawful because of an exception within the statute. I am of the opinion that under the evidence of this case they have met that burden and that pursuant to Va. Code § 2.1-341(a) (1979) the meeting was not unlawful.

The real issue in the case is whether the topics discussed dealt with the transaction of "public business." "Transaction of public business" is not defined by statute, and a search of *Black's Law Dictionary* is of little help. The Freedom of Information Act makes reference to many terms and puts its charge in many ways.

1. "Free entry to meetings of public bodies wherein the *business of the people* is being conducted." Emphasis added. Va. Code Section 2.1-340.1 (1979).

2. "*Affairs of government* are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of *any action taken* at any level of government." Emphasis added. Va. Code Section 2.1-340.1 (1979).

3. "Afford every opportunity to citizens to witness the operations of government." Va. Code Section 2.1-340.1 (1979).

4. "No thing which should be public may be hidden from any person." Va. Code Section 2.1-340.1 (1979).

5. "No part of the purpose of such gathering or attendance is the *discussion or transaction of any public business.*" Emphasis added. Va. Code § 2.1-341(a) (1979).

6. "Not called or prearranged with any purpose of discussing or transacting any business of the body or entity." Va. Code Section 2.1-341(a) (1979).

WDBJ cites *Orange Cty. Publications* v. *Council of City of Newburgh*, 401 N.Y.S.2d 84 (1978). This case holds in part that the phrase "officially transacting public business," when read in conjunction with the Open Meetings Law legislative declaration, contemplates a broad view extending not only to the taking of an official vote but also to the peripheral discussions surrounding the vote. The Virginia Freedom of Information Act is much like the New York Open Meetings Law. The case further holds that the performance of a public duty can be equated with the transaction of public business. To this end, any attempt by a public body or entity in Virginia to use a "work session," "agenda session," "conferences," "workshops," "organizational meetings," and the like for the purpose of crystallizing secret decisions for a later formal vote in an open meeting, unless permitted by a statutory executive session, is prohibited.

However, the petition for injunctive relief sought by WDBJ Television cannot be decided in a vacuum. Each case turns on the evidence presented and its application to the law. Dr. Donald P. Lacy was called by the petitioner and testified as to the purpose of the meeting and his participation in it. Dr. Harry Nickens, a member and past chairman of the Board of Supervisors, testified on behalf of the Board. Their testimony and the stipulation of the parties clearly established that no topics or issues were discussed which related to any public business presently before the Board for its consideration nor any business matters expected to be presented for action or inaction. There was no debate about how a member should or should not vote on any issue; no votes were taken; no one agreed to stand or not stand for any position on any business matter. In short, no public business was discussed that was or would likely be before the Board for decision. It is to the supervisors' credit that they announced their purpose in advance and did not, by sham, "create" an executive committee exception to justify denial of entry by the public.

The evidence was that the session dealt not with the merits, pros or cons, or any issue of public business, but rather with how the members could learn to communicate with each other, the media, and the public. It was a workshop where a professional was present, not to assist them in debate on an issue but rather to teach them skills in communication, the handling of stress, and the techniques of decision making. In short, it was a professional's critique of their methods of dealing with the public and with each other but not upon the merits of how they should or should not vote or stand on an issue of public business.

In summary, WDBJ Television has proved that the meeting was called and that entry was denied, but the evidence has clearly established that the meeting was not called for the purpose of transacting public business and that the supervisors did not in fact discuss matters or issues before it for decision. Under the evidence, this Court cannot and should not grant future permanent injunctive relief.

If the General Assembly had intended to enact a *per se* prohibition against any private meeting of the members of a public body regardless of whether the public business was to be discussed or transacted, they presumably would have done so.