Alexander, J.
(dissenting). By constitutional design, our system of government is tripartite in nature, with power shared among three coequal branches. "It is a fundamental principle of the organic law that each department should be free from interference, in the discharge of its peculiar duties, by either of the others” (Saxton v Carey, 44 NY2d 545, 549). We have held that "the court as a policy matter, even apart from principles of subject matter jurisdiction, will abstain from venturing into areas if it is ill-equipped to undertake the responsibility and other branches of government are far more suited to the task” (Jones v Beame, 45 NY2d 402, 408-409 [Breitel, Ch. J.]). Such judicial restraint reflects a recognition that there are "questions of broad legislative and administrative policy beyond the scope of judicial correction” (Jones v Beame, 45 NY2d, at 408, supra) and that certain decisions, involving "questions of judgment, discretion, allocation of resources and priorities inappropriate for resolution in the judicial arena”, are better left to the "network of executive officials, administrative agencies and local legislative bodies” (Matter of Abrams v New York City Tr. Auth., 39 NY2d 990, 992). Because we believe the majority, in affirming the determination below invalidating the Nassau County budget, has departed from fundamental principles defining the proper scope of judicial authority, and has intruded into an area of responsibility constitutionally reserved to the other branches of government, we respectfully dissent.
It can hardly be disputed that the creation and enactment of a local budget is a responsibility peculiar to the executive and legislative branches of government (Saxton v Carey, 44 NY2d 545, 549, supra). The executive branch "has the responsibility and the obligation to ascertain the financial needs of the various departments and projects of the [local] government, and to submit to the [local legislative body] for its consideration a budget and various appropriation bills incorporating those needs” (Saxton v Carey, 44 NY2d, at 549, supra). It is then for the local legislative body "to approve or disapprove of the various expenditures proposed” (Saxton v Carey, 44 NY2d, at 549, supra). Of course, this is not to say that the *377 budgetary process is completely insulated from judicial review. Indeed, we have acknowledged that where a budget is prepared in clear violation of a statutory or constitutional mandate, it is subject to review by the courts (see, Wein v Carey, 41 NY2d 498; Matter of Block v Sprague, 285 NY 69). Further, "[t]he courts will always be available to resolve disputes concerning the scope of that authority which is granted by the Constitution to the other two branches of the government” (Saxton v Carey, 44 NY2d, at 551, supra). Such judicial intervention is permitted "only in the narrowest of instances”, however, and will never be available to review a local budget plan directly (see, Wein v Carey, 41 NY2d, at 505, supra).
Article III of the County Government Law of Nassau County (County Charter) (L 1936, ch 879 and amendments thereunder) directs the County Executive to submit to the Board of Supervisors a "proposed budget of revenue and expenditure for the ensuing fiscal year for the county” (County Charter § 302). The proposed budget must contain, among other things, "a statement of the estimated cash balance, after deducting commitments estimated to be outstanding at the close of the current fiscal year, in each fund, applicable to expenditures of the ensuing fiscal year” (County Charter § 302 [5]). In accordance with this legislative mandate, respondent Gulotta transmitted his proposed 1988 budget for Nassau County to the county legislature on November 9, 1987. The proposed budget, totaling approximately $1,429 billion in operating revenues, contained an estimated general fund balance of $17.7 million. On December 21, 1987, after holding a public hearing on the budget as required by County Charter § 304, respondent Nassau County Board of Supervisors (Board) formally adopted the budget. In the process of its review and adoption of the proposed budget, the Board allocated an additional $2.5 million to the general fund balance, raising the amount of the total balance to $20.2 million.
Petitioner Korn, a taxpayer and resident of Nassau County, instituted this proceeding challenging the validity of the Nassau County budget based upon certain official pronouncements of respondent Gulotta indicating an estimated year-end surplus greater than the figure appearing in the budget as proposed and as adopted. In a news release issued on October 26, 1987, prior to the Board’s adoption of the budget, respondent had announced an estimated year-end cash surplus of $80.1 million. A similar prediction of "year-end cash surpluses of about $90 million” was repeated in the budget message *378 respondent submitted to the Board with the proposed budget on November 9 of the same year. Rather than allocating this entire estimated surplus so as to permit the reduction of property tax rates for a single year, respondent announced a plan "to use the accumulated surplus in the General Fund to stabilize property taxes over a three-year period” (Gulotta, Budget Message to Board of Supervisors). Accordingly, on February 22, 1988, the Board established, through a supplemental appropriation, a "tax-stabilization reserve fund” of approximately $24.5 million, as authorized by General Municipal Law § 6-e.
Petitioner contends, and the majority agrees — as did the lower courts — that respondent Gulotta has failed to comply with the mandate of County Charter § 302 (5) by not including "the entire estimated year-end cash balance” in the budget. Petitioner argues that the estimate is invalid because the figure submitted is less than the $80.1 million originally forecast by respondent as a "year-end cash surplus”. Petitioner’s argument, therefore, essentially is that the $17.7 million figure included in the budget submitted by respondent to the Board is erroneous because it is not equal to the estimated figure previously mentioned in an October 1987 press release. Such an argument, however, may not be countenanced by the courts, for resolution of the issue it presents implicates powers and responsibilities exclusively reserved to the other branches of government.
The County Charter provision at issue requires the County Executive to submit an estimate of the year-end cash balance; it does not, however, specify how that estimate is to be derived. It is elementary that the preparation of budget estimates is largely a discretionary function of budget officials in the executive and legislative branches (2 McQuillin, Municipal Corporations § 10.36; 15 McQuillin § 39.40 [3d rev ed]; 25 NY Jur 2d, Counties, Towns and Municipal Corporations, § 184; see, City of Beacon v County of Dutchess, 285 App Div 1050). Judicial review will not lie to correct perceived errors in the exercise of that discretion in the absence of corruption, fraud or bad faith (2 McQuillin, Municipal Corporations §§ 10.33, 10.34 [3d rev ed]; 25 NY Jur 2d, op. cit., § 184). Further, where a governmental official is duly authorized to perform a particular function, and the manner in which the authority is to be exercised is not specified by statute, "the courts will not undertake to control the manner of the exercise of the authority where no applicable rule of law is violated, and the *379 authority given is not exceeded or abused” (2 McQuillin, Municipal Corporations § 10.34, at 1100 [3d rev ed]).
Here, respondent Gulotta was duly authorized to submit a statement of the estimated cash balance "after deducting commitments estimated to be outstanding at the close of the current fiscal year, in each fund, applicable to expenditures of the ensuing fiscal year” (County Charter § 302 [5]). Respondent did so, submitting an estimate of $17.7 million after deducting funds that were "committed”, inter alia, to a tax-stabilization fund to be created by the Board. Nowhere does the statute define "commitments” at all, much less give it the juristic connotation urged by the majority. Nor does it explain when funds, which might otherwise be considered part of the general fund balance, may be excluded from that balance because deemed not "applicable to expenditures of the ensuing fiscal year”.
In response to petitioner’s contention that the "entire year-end surplus” is missing from the budget, respondent explains that $24.5 million was omitted from the general fund balance because it was allocated to the tax-stabilization fund at the end of fiscal year 1987, and was therefore not applicable to expenditures in fiscal year 1988. The creation of a tax-stabilization fund was certainly within the exclusive power of the Board (General Municipal Law § 6-e; see, 1969 Opns St Comp No. 69-708 [unreported]). That the fund was not actually created until February 1988 does not render the actions of respondents retrospectively illegal. Gulotta unambiguously declared in his budget message his intention to use a portion of the budget surplus to stabilize property taxes; in adopting the budget, the Board knowingly accepted his proposal. There is no requirement in the statute that the moneys he "committed” to the stabilization fund actually or legally be appropriated in the 1987 calendar year. Nassau County maintains its books of account on a modified accrual basis, with revenues and expenditures booked to the period in which they accrue. Consequently, although the actual amount of the budget surplus was not ascertained until the beginning of the 1988 calendar year, that surplus was "committed” to the tax-stabilization fund during the 1987 fiscal year. Additionally, certain tax revenues included in the $80.1 million estimated surplus which were derived under Tax Law § 1262 (d) were applied directly to reduce real property taxes applicable to different municipalities within Nassau County, and thus were not *380 available for general expenditures on a county-wide basis.* These decisions relating to the proper characterization of certain revenues as "commitments” or as funds not "applicable to expenditures of the ensuing fiscal year” are quintessentially discretionary in nature, and may not properly be second-guessed by the courts.
This does not mean that petitioner may not disagree with respondent Gulotta’s accounting methodology and budget calculations, and voice that disagreement at the public hearings on the budget required by statute (County Charter § 304). Such disagreement, however, surely presents no justiciable issue for this court’s review. Indeed, challenging the executive’s method of computing a budget estimate is analogous to challenging the degree of itemization in a budget. In rejecting the latter challenge as it related to the State budget, this court held: "[T]he degree of itemization necessary in a particular budget is whatever degree of itemization is necessary for the Legislature to effectively review that budget. This is a decision which is best left to the Legislature, for it is not something which can be accurately delineated by a court. It is, rather, a function of the political process, and that interplay between the various elected representatives of the people which was certainly envisioned by the draftsmen of the Constitution. Should the Legislature determine that a particular budget is so lacking in specificity as to preclude meaningful review, then it will be the duty of that Legislature to refuse to approve such a budget. If, however, as here, the Legislature is satisfied with the budget as submitted by the Governor, then it is not for the courts to intervene and declare such a budget invalid because of a failure to measure up to some mythical budget specifically delineating the exact fate of every penny of the public funds. 'Direct concern with the degree of particularization or subdivision of items lies exclusively with the executive and legislative branches of government simply because they are the sole participants in the negotiation and adoption of an executive budget’ * * * Should a Legislature fail in its *381 responsibility to require a sufficiently itemized budget, the remedy lies not in the courtroom, but in the voting booth” (Saxton v Carey; 44 NY2d, at 551, supra [citation omitted]). The reasoning of this court in Saxton is applicable here as well. Respondent Gulotta clearly complied with the literal requirements of the statute by submitting "a statement of the estimated cash balance” in his proposed 1988 budget. The proposed budget was duly adopted by the Board, which chose to supplement the general fund balance by $2.5 million. The accuracy of respondent’s estimate, much like the degree of budget itemization required, is a matter necessarily left to the executive and legislative branches of government, as the "sole participants in the negotiation and adoption of an executive budget” (Hidley v Rockefeller, 28 NY2d 439, 445). Any other result would set a destabilizing and sweeping precedent, permitting judicial review of discretionary budget decisions whenever a taxpayer wished to challenge the validity of an estimate appearing in the budget and was able to point to an official pronouncement indicating a contrary amount. Annual budgets and municipal fiscal matters would never be settled or reliable once we embark on this course. This type of unrestrained judicial interference with the governmental functions reserved to the other branches of government would clearly violate the separation of powers principle and result in an intolerable disruption of government affairs. Inasmuch as the literal requirements of County Charter § 302 (5) have been satisfied, therefore, no justiciable issue is presented for this court’s review, and if respondents have failed in their respective responsibilities to properly prepare and adopt the county budget, then the remedy lies with the voters, not the courts.
Moreover, even if the issue presented were deemed justiciable, we believe that Supreme Court erred in converting that part of the article 78 petition attacking the validity of the Nassau County budget into a declaratory judgment action authorized under General Municipal Law §51. "It is well established that a taxpayer action pursuant to section 51 of the General Municipal Law lies 'only when the acts complained of are fraudulent, or a waste of public property in the sense that they represent a use of public property or funds for entirely illegal purposes’ (Kaskel v Impellitteri, 306 NY 73, 79; see Gaynor v Rockefeller, 15 NY2d 120, 133-134; Stahl Soap Corp. v City of New York, 5 NY2d 200, 204; Talcott v City of Buffalo, 125 NY 280, 288).” (Mesivta of Forest Hills Inst. v City of New York, 58 NY2d 1014, 1016.) Here, there is no *382 evidence of fraud and the acts complained of are, at worst, technical violations of the budgetary requirements specified by statute. In these circumstances, invocation of the court’s equitable jurisdiction under General Municipal Law §51 was completely unauthorized and disproportionate to the alleged wrong, and petitioner is limited to the legal remedy of mandamus (see, Southern Leasing Co. v Ludwig, 217 NY 100, 103-104 [Cardozo, J.]).
Additionally, the drastic remedy decided on by the lower courts — invalidation of the entire Nassau County budget— constitutes an abuse of discretion as a matter of law. Petitioner has failed to demonstrate sufficient prejudice, and the one technical deficiency in a single line in an 832-page document relating to surplus funds allegedly not accounted for does not warrant so extreme a result (see, Kessel v D’Amato, 97 Misc 2d 675, 682). This is particularly true where respondents have explained the disposition of the disputed funds at great length, and where there clearly has been no attempt to hide any moneys from public scrutiny. Of course, as we conclude that the issue presented is not justiciable, we need not speculate on what might constitute an appropriate remedy.
The courts must be ever vigilant against upsetting our tripartite scheme of government by intruding upon the powers and responsibilities constitutionally delegated to the executive and legislative departments. In invalidating the Nassau County budget, we believe the majority has let down its guard and threatened this delicate constitutional balance. Accordingly, we would reverse the order of the Appellate Division and dismiss the petition as presenting a nonjusticiable issue.
Chief Judge Wachtler and Judges Kaye, Titone and Hancock, Jr., concur with Judge Simons; Judge Alexander dissents and votes to reverse in a separate opinion in which Judge Bellacosa concurs.
Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to petitioner.

 As explained in the affidavit of Richard S. Camp, Nassau County’s Budget Director, pursuant to Tax Law § 1262 (d), Nassau County’s three towns permit their portion of sales tax revenues levied by the county on their behalf to be retained by the county, which then applies the revenues as a credit to reduce the towns’ property taxes. These section 1262 (d) moneys — amounting to about $23.9 million of the $80.1 million estimated budget surplus — are committed by law to the reduction of property taxes, and have no relation to the estimated surplus in the general fund balance.