193 N.J. Super. 488 (1984)
475 A.2d 59
MAURICE RIVER TP. BD. OF EDUC., PLAINTIFF-APPELLANT,
v.
MAURICE RIVER TOWNSHIP TEACHERS ASSOCIATION AND NEW JERSEY EDUCATION ASSOCIATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1984.
Decided February 22, 1984.
*489 Before Judges BISCHOFF, PETRELLA and BRODY.
Rushton H. Ridgway argued the cause for appellant (Milstead & Ridgway, attorneys; Louis G. Rubino on the brief).
Steven R. Cohen argued the cause for respondents (Selikoff & Cohen, attorneys).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
The issue presented by this appeal is whether the Maurice River Township Teachers Association (Association) may record *490 by means of videotape the public meetings of the Township Board of Education (Board). The trial court, in an opinion published at 187 N.J. Super. 566 (Ch.Div. 1982), held that it could. We affirm.
The plaintiff Board in October 1982 was engaged in contract negotiations with defendant Association, an affiliate of the defendant New Jersey Education Association. "Negotiations had been difficult and unproductive." On October 19 the Association notified the Board that it intended to videotape the Board's October 21, 1982 regularly scheduled public meeting. The Board informed the Association that it was not permitted to do so. The Association, nevertheless, proceeded to set up its equipment and to videotape the meeting. When the Association would not desist the Board adjourned the meeting and instituted this action to enjoin further videotaping of its meetings.
Plaintiff alleged the equipment and the videotaping were "obtrusive, distracting, disruptive and disturbing, not only to the members of the Board of Education but also to certain members of the public, and is otherwise not condusive [sic] to the conducting of an orderly business meeting."
Defendant, on the other hand, contended their videotaping activities were orderly, unobtrusive and not distracting or disturbing; that the Board's refusal to proceed with the meeting constituted a de facto ban on the videotaping and was an arbitrary, capricious and unreasonable action and an impermissible prior restraint. The Association further contended its right to attend the open portion of the Board meeting included a constitutional right to use the most accurate means to gather and disseminate information to its members, and it had the statutory right as an employee representative pursuant to N.J.S.A. 34:13A-5.3 to videotape the public meeting.
The court examined the videotape equipment the Association proposed to use. It found the equipment was "silent, inoffensive and unobtrusive"; that its use was neither distracting nor inhibiting and entered a summary judgment permitting defendant *491 to videotape plaintiff's public meeting subject to guidelines which were fashioned after the Supreme Court's guidelines for "still and television camera and audio coverage of proceedings in the courts of New Jersey."
On this appeal the Board contends the case was not ripe for summary judgment, that N.J.S.A. 34:13A-5.3 does not permit the Association to videotape the Board's meetings, that the Association has no constitutional right to videotape public meetings, that the records of the school board's meetings are accurately preserved through the use of written minutes and tape records, and the guidelines ordered by the trial court are vague and unworkable.
We determined at oral argument that since the entry of the judgment under review on December 13, 1982, the Association has continued to videotape the Board's public meetings without incident. The equipment used has consisted of a single camera placed in the rear of the room on a tripod. The camera is silent and operates without augmented or supplemental lighting. The rather large TV monitors which were in the room on the occasion of the first videotaping are no longer present or used. The only objection conveyed to us by the plaintiff was the statement that the members of the Board were uncomfortable with the eye of the camera pointed at them and they felt inhibited. They also expressed the concern that members of the public would feel inhibited and therefore refrain from participating in public meetings. Counsel for the Board was unable to suggest any other facts which it would present if the case were returned to the trial court of a plenary hearing. We reject the initial contention of the Board that the summary judgment proceedings were premature.
The Board argues that the Association has no express federal or state constitutional or statutory right to videotape the public meetings of the Board. That may be so, but on the other hand the Board points to no constitutional or statutory bar to such recording. We do know there is no per se constitutional *492 bar to the videotaping of criminal trials. Chandler v. Florida, 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981); Globe Newspapers v. Superior Court, 457 U.S. 596-603, 102 S.Ct. 2613-2618, 73 L.Ed.2d 248-255 (1982). And, our New Jersey Supreme Court has opened all civil, criminal and municipal court proceedings (with some few exceptions) to "still and television camera and audio coverage of proceedings in the courts of New Jersey." We are aware of the fact that the guidelines for such coverage provide that "Photographing, live broadcasts and taping of public court proceedings are permitted by media representatives only." (See Guideline 12). However, we do not consider that restriction controlling or significant under the facts of this case. See Code of Judicial Conduct Rule 3 A(7)(b).
Video cameras and recorders have become a commonplace item in our every day life. They are a common security device and confront us at the bank, in stores and even in apartment houses. Exposure to video recording of all of us is a normal occurrence on the streets and in public gatherings such as athletic contests and sporting events where participants and spectators are under constant television surveillance. Such exposure is actively sought by all those running for public office in order to place their image and their ideas before the voters. The extent of the use of not only TV but the video tape recorder (VTR) in this country is detailed in and apparent from the opinion in Sony Corp. of America v. Universal City Studios, ___ U.S. ___, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984).
We are not aware of any per se constitutional, statutory or common law impediments to the use of a video camera to tape and record the public proceedings of the Board of Education, and the Board has failed to establish the existence of any facts which would warrant the court's intervention to bar such conduct. The Board's vague suggestion that its members may be inhibited, intimidated or uncomfortable under the eye of the video camera, or that members of the public may be intimidated *493 or reluctant to come forward and participate in the public meeting is not persuasive. In Chandler v. Florida, supra, the court found the risk of some juror prejudice in some cases insufficient to justify an absolute ban of a TV news broadcast of a trial. Id. 449 U.S. at 574-575, 101 S.Ct. at 809-810, 66 L.Ed.2d at 752. If a TV broadcast of a criminal trial is not a per se unconstitutional act, we are satisfied the same applies to the less formal atmosphere of a public school board meeting. To warrant a ban on the videotaping of the Board meetings, more than a potential for adversely affecting one or more persons must be shown. Id. at 581, 101 S.Ct. at 813, 66 L.Ed.2d at 756. See also Belcher v. Mansi, 569 F. Supp. 379, 383 (DRI 1983).
We hold that the trial court did not err in ruling that the Association had the right to videotape the proceedings of the Board.
The Board contended before us that it had been deprived of the opportunity to participate in the formulation of the guidelines established by the trial court. The record does not support that contention. However, we are of the opinion that the Board should be given the opportunity in the first instance to formulate reasonable guidelines for the videotaping of its proceedings. Such guidelines should include the number and type of cameras permitted, the positioning of the cameras, the activity and location of the operator, lighting and other items deemed necessary to maintain order and to prevent unnecessary intrusion into the proceedings. Furthermore, the disposition and safe keeping of the tapes and the circumstances under which they should be made available to the general public should be provided for in the guidelines. Provisions should also be made for the interruption of video coverage at the request of a parent who wishes to discuss a personal matter pertaining to a pupil in the school system with the Board when a video recording could be embarrassing or humiliating if played at a later time.
*494 We affirm the judgment permitting the defendant to video tape the public meetings of the plaintiff Board. The plaintiff has leave to formulate a set of guidelines designed to regulate and control reasonably the videotaping of its public proceedings. The plaintiff thereafter has leave to apply to the trial court for the vacation of the guideline portion of the judgment under review based upon a showing that its proposed guidelines provide ample safeguards for the rights and interests of the Board and the public.
We do not retain jurisdiction.