In the Matter of GOODSON TODMAN ENTERPRISES, LTD., Appellant, v CITY OF KINGSTON COMMON COUNCIL, Respondent.

Third Department, January 4, 1990

APPEARANCES OF COUNSEL

*Ricken, Goldman, Sussman & Blythe (Alan N. Sussman* of counsel), for appellant.

*S. James Matthews, Corporation Counsel (Maureen A. Keegan* of counsel), for respondent.

**OPINION OF THE COURT**

MERCURE, J.

Respondent, composed of 13 Aldermen, is the legislative branch of government of the City of Kingston in Ulster County. Respondent requires a quorum of seven members to conduct business. The Building, Repair and Supply Committee (hereinafter the Committee), composed of 5 members, 3 of whom constitute a quorum, is one of respondent's standing committees. Susan McConekey, one of the members of the Committee, was not present at its duly noticed public meeting of February 11, 1988. On February 21, 1988, three other members of the Committee met with McConekey at her home, allegedly to inform her of the events of the earlier meeting so that she could vote intelligently regarding the transfer of a city-owned parcel of real property. This meeting was not open to the public and was not previously announced to the public or the press. No vote was taken at the meeting.

On February 25, 1988, at the request of James Matthews,

Corporation Counsel, a meeting was held at his office so that he could be briefed on the city's revaluation of its real property and the provisions of RPTL 1903. Prior to the meeting, a reporter for petitioner's publication, the Daily and Sunday Freeman, asked Matthews if she could attend the meeting; he refused her request. Matthews told the reporter that he did not know "all who were going to be in attendance". The city's Assessor apparently invited several people to the session because eight of respondent's members, a city Assessor and State and county representatives ultimately attended. Although only four Aldermen were present when the meeting commenced, three more arrived during the first 45 minutes of the meeting and an eighth came about 45 minutes later. None of the Aldermen took a presiding role during the meeting and no vote was taken.

Thereafter, petitioner brought suit seeking, *inter alia*, a declaratory judgment that both of these meetings were illegal and contrary to the Open Meetings Law (Public Officers Law art 7) and to enjoin respondent from holding such secret meetings in the future. Supreme Court determined that the meetings were not covered by the Open Meetings Law as there was no "official convening of a public body" as defined by Public Officers Law § 102 (1) and that, with regard to the February 25, 1988 meeting, a quorum was virtually never present. Petitioner now appeals.

Initially, we recognize that the Legislature, by enacting the Open Meetings Law, intended to affect the entire decision-making process and not merely formal vote taking as it is the "deliberative process which is at the core of the Open Meetings Law" *(Matter of Orange County Publs. v Council of City of Newburgh,* 60 AD2d 409, 414, *affd* 45 NY2d 947). Public bodies may not escape public view by claiming that they did not formally convene when, in fact, a meeting took place at which business of public interest was discussed *(Matter of Oneonta Star Div. of Ottaway Newspapers v Board of Trustees,* 66 AD2d 51, 54). We agree that not every assembling of the members of a public body was intended to fall within the scope of the Open Meetings Law. Clearly, casual encounters by members do not fall within its purview *(see, Matter of Orange County Publs. v Council of City of Newburgh, supra,* at 416), but informal conferences, agenda sessions and work sessions do invoke the provisions of the statute when a quorum is present and when the topics for discussion and decision are such as would otherwise arise at a regular meeting *(see, supra,* at 416-

417; *see also, Matter of Oneonta Star Div. of Ottaway Newspapers v Board of Trustees, supra,* at 53).

▮ Contrary to respondent's arguments, we find that the McConekey meeting was covered by the Open Meetings Law. A quorum of the Committee was present and the meeting was not a casual encounter but, rather, a planned informal conference. Moreover, the topic of discussion had already arisen at an earlier meeting which was required to be open to the public. Nor is there a legislative exception to the Open Meetings Law for "briefing sessions" *(see, Matter of Binghamton Press Co. v Board of Educ.,* 67 AD2d 797, 798). Respondent's alternative argument that the Committee could have conducted an executive session is similarly meritless. In the absence of authorization given at an open meeting, a governmental body may not conduct an executive session *(see,* Public Officers Law § 105 [1]; *Daily Gazette Co. v Town Bd.,* 111 Misc 2d 303, 304). We also conclude that the February 25, 1988 meeting falls within the purview of the Open Meetings Law and Supreme Court was incorrect in finding otherwise. We reject respondent's argument that because the purpose of the meeting was to brief Matthews, the provisions of the Open Meetings Law were not invoked. One of the session's topics, the city's revaluation of its real property, was certainly of interest to the public. Additionally, the meeting was planned and, though less than a quorum was present at the commencement of the meeting, it is conceded that a quorum was eventually present. Notably, respondent has not raised the lack of a quorum as a defense.

▮ As a final matter, we address petitioner's request for injunctive relief. It appears to us that prior to this controversy respondent had duly noticed its meetings and opened them to the public. Additionally, the record demonstrates that respondent and the Daily and Sunday Freeman had a positive working relationship prior to February 1988. Although the meetings at issue violated the statute, it is our view that the record does not support a finding of bad faith on respondent's part. Clearly, violations of the statute need not automatically trigger enforcement sanctions *(see,* Public Officers Law § 107; *Matter of New York Univ. v Whalen,* 46 NY2d 734, 735; *Puka v Greco,* 119 Misc 2d 696, 702, *affd* 104 AD2d 362). Accordingly, we see no reason to resort to the "drastic remedy of injunctive relief" *(Matter of Binghamton Press Co. v Board of Educ.,* 67 AD2d 797, 798, *supra)* or make an award of counsel fees *(see,* Public Officers Law § 107 [2]).

KANE, J. P., CASEY, WEISS and HARVEY, JJ., concur.

Judgment modified, on the law, without costs, by reversing so much thereof as denied petitioner's request for a declaration; declare that respondent's meeting of February 25, 1988 and the meeting of its Building, Repair and Supply Committee of February 21, 1988 were both illegal and contrary to the provisions of the Open Meetings Law; and, as so modified, affirmed.