*307 OPINION OF THE COURT
Jan H. Plumadore, J.
The affirmative defense of defective service is without merit: an order to show cause may be served in any manner the court directs (CPLR 403 [d]; 7804 [c]) which gives reasonable notice. Even mail service on the attorney is acceptable and is the customary mode of service in inmates’ CPLR article 78 proceedings, for example. Petitioner was entitled to rely on Village records and Mr. Murray’s frequent public appearances as Village Attorney in so-denominating him in the order to show cause, capable of receiving (and transmitting) notice of these proceedings.
The "Recording Policy” adopted on June 13, 1994, is a blanket ban on video recording (cameras and other similar recording devices). Petitioner had previously successfully recorded meetings and provided them unedited to the local cable access channel. On June 20, 1994, petitioner and his camcorder and a WPTZ news crew attempted to film a Village Board meeting. They were informed of the new policy, petitioner objected and was eventually removed by the police and arrested. WPTZ turned off its camera.
The use of hand-held or other unobtrusive audio tape recorders is settled — they are permitted (Mitchell v Board of Educ., 113 AD2d 924 [1985]). Mitchell, construing both the right of a public agency or unit of government to adopt reasonable procedures governing its operations and Public Officers Law article 7 concerning open meetings, found a blanket prohibition on tape recording unreasonable and violative of the Open Meetings Law (Public Officers Law art 7).
On August 26, 1986 the Executive Director of the Committee on Open Government opined (OML-AO-1317, at 3) with respect to video recording as follows: "If the equipment is large, if special lighting is needed, and if it is obtrusive and distracting, I believe that a rule prohibiting its use under those circumstances would be reasonable. However, if advances in technology permit video equipment to be used without special lighting, in a stationary location and in an unobtrusive manner, it is questionable in my view whether a prohibition under those circumstances would be reasonable.”
On April 1, 1994 Mr. Freeman further opined (OML-AO-2324) that a county legislature’s resolution limiting hand-held camcorders to the spectator area in the rear of the legislative chamber was not per se unreasonable but rather, as chai *308 lenged, it depended for its legitimacy on whether or not the camcorders could actually record the proceedings from that location.
Blanket prohibition of audio recording is not permissible, and it is likely that the appellate courts would find that also to be the case with blanket prohibitions of video recording. However, what might be reasonable in one physical setting — a village board restricting camcording to the rear area of its meeting room — might not be in another — the larger chambers of a county legislature (OML-AO-1317). It might well be reasonable in a village or other space-restricted setting to restrict the number of camcorders to one, as the court system may with its pooling requirement for video coverage of trials (22 NYCRR parts 29, 131). Such a requirement might be viewed as unreasonable in a large county legislative chamber or where a local board of education is conducting a meeting in a school auditorium.
As Mr. Freeman observed with respect to video recording (OML-AO-1317), if it is "obtrusive and distracting,” a ban on it is not unreasonable. It is here claimed to be distracting: Tupper Lake Village Board members and some segment of the public aver that they are distracted from the business at hand because they do not wish to appear on television — the sole justification offered in defense of the policy.
Mitchell (supra) held that fear of public airing of one’s comments at a public meeting is insufficient to sustain a ban on audio recording.
Is Mr. Peloquin’s (or anyone else’s) video recording of village board proceedings obtrusive? Among various definitions, "obtrusive” has been defined as "unduly prominent” (Oxford English Dictionary [2d ed 1989]), "undesirably prominent” (Webster’s Ninth New Collegiate Dictionary [1983]), "intrusive, undesirably or unattractively noticeable” (Webster’s Third New International Dictionary Unabridged [1961]), "interfering” (Random House Dictionary of the English Language [2d ed 1987]). The Village would argue that this is precisely what is occurring.
It has also been defined as "presumptuous, blatant” (Random House Dictionary of the English Language [2d ed 1987]), "thrust forward without warrant or request” (New Merriam-Webster Dictionary for Large Print Users [1989]), which Mr. Peloquin would certainly argue it is not.
Hand-held audio recorders are unobtrusive (Mitchell v *309 Board of Educ., supra); camcorders may or may not be depending, as we have seen, on the circumstances. Suffice it to say, however, in the face of Mitchell, the Committee on Open Government’s (Robert Freeman’s) well-reasoned opinions (supra) and the court system’s pooled video coverage rules and/or options, a blanket ban on all cameras and camcorders when the sole justification is a distaste for appearing on public access cable television is unreasonable. While "distraction” and "unobtrusive” are subjective terms, in the face of the virtual presumption of openness contained in article 7 of the Public Officers Law and the insufficient justification offered by the Village, the "Recording Policy” in issue here must fall.
The Recording Policy of the Tupper Lake Village Board adopted June 13,1994 is hereby declared null and void.