[759 NYS2d 513]

In the Matter of AMY CSORNY et al., Appellants, v SHOREHAM-WADING RIVER CENTRAL SCHOOL DISTRICT et al., Respondents.

Second Department, May 12, 2003

APPEARANCES OF COUNSEL

*Roy A. Klein*, Melville, for appellants.

*Rains & Pogrebin, P.C.*, Mineola (*Howard M. Miller* and *Richard G. Kass* of counsel), for respondent.

## OPINION OF THE COURT

S. MILLER, J.

The legislative declaration to the Open Meetings Law (Public Officers Law § 100) begins: "It is essential to the maintenance of a democratic society that the public business be performed in an open and public manner." This appeal presents the issue of whether a board of education of a public school district may reserve unto itself the right to permit or prohibit videotaping of its public meetings. For the reasons that follow, we answer that question in the negative.

The facts underlying this appeal are not in substantial dispute. The individual respondents comprise the Board of Education (hereinafter the Board) of the Shoreham-Wading River Central School District (hereinafter the District). The petitioners reside within the geographic boundaries of the District, and are the parents of children attending District schools.

In 1997, the Board adopted Resolution 1530 governing the broadcasting and tape recording of Board meetings. That resolution "recognize[d the Board's] responsibility to conduct business publicly, and to bring school issues to the attention of the community." Thus, the Board decreed that "public meetings of the Board * * * may be tape recorded and/or otherwise broadcast or televised by news media personnel and others," subject to three conditions that are not relevant to this appeal.

The petitioners have reportedly been active participants at the regular meetings of the Board. Beginning in or about July 2000, the petitioners brought a palm-sized video camera, mounted on a tripod at the rear of the room, which they used to record Board meetings. This camera was, by itself, unobtrusive and it required no additional lights.

At the July 11, 2000, Board meeting, the first meeting that the petitioners attempted to record, the Board instructed the petitioners to turn off their camera. The petitioners were then unaware of Resolution 1530, and they complied. They later learned, however, that Resolution 1530 permitted the videotaping of Board meetings.

At the July 25, 2000, meeting, the petitioners again set up their camera, and again the Board asked them not to record

the meeting. On this occasion, however, the petitioners protested the Board's request, citing advisory opinions of the New York State Committee on Open Government supporting their right to videotape the meeting. After considering the matter, the Board permitted the petitioners to record the meeting. The petitioners also recorded several subsequent meetings.

At the meeting of October 10, 2000, the Board, by a vote of 5 to 2, announced the adoption of a new resolution (hereinafter the 2000 Resolution), which would become effective after being read at the October 24, 2000, meeting, restricting the right of the petitioners and other citizens to record meetings. The 2000 Resolution read as follows:

> "The Board of Education recognizes its responsibility to conduct business publicly, and in a manner conducive to the unhindered and free exchange of ideas, and to further bring issues affecting the school district to the attention of the Board as well as the community. Therefore, public meetings of the Board of Education may be audio recorded by member (s) of the public, subject to the following conditions:
>
> "(a) The Board reserves the right to direct that a contemporaneous audio and/or videotape or other visual recording be made of the public meeting to ensure a reliable, accurate and complete account of the proceeding.
>
> "(b) If any person in attendance requests that audio recording and/or videotape or other visual recording be interrupted and/or discontinued for a portion of the meeting, it shall be the responsibility of the Board President to render a decision on such a request, unless he or she is overruled by a majority vote of the Board, which decision shall, in any event, be consistent with the provisions of the Open Meetings Law and the United States and New York State Constitutions.
>
> "(c) At all times and under any circumstance, audio recording and/or videotaping or other visual recording must be unobtrusive in manner and must not interfere with or distract from the deliberative process of the Board.

"(d) Videotaping or other visual recording under any other circumstances shall not be permitted."

Over the next several Board meetings, the petitioners pressed their case, claiming a right to record the meetings on videotape. The Board, however, rejected their arguments.

Thus, the petitioners commenced this proceeding pursuant to CPLR article 78, for a judgment annulling the Board's 2000 Resolution. Their petition alleged the salient facts and charged, inter alia, that the 2000 Resolution violated the Open Meetings Law (see Public Officers Law art 7). The petition further disputed the Board's finding that the amendment was necessary to foster free participation by attendees who would otherwise be intimidated by the presence of a video camera. Rather, they asserted that the Board's real reason for enacting the 2000 Resolution was out of fear that the petitioners, who had been vocal critics of the Board, would use the videotapes for political purposes.

The Board interposed a verified answer that denied that the 2000 Resolution was enacted for any improper purpose or in violation of the Open Meetings Law. Along with its answer, the Board submitted affidavits from its president, three Board members, the District Interim Superintendent, and three parents of District students, all supporting the argument that the 2000 Resolution was adopted to alleviate the concerns of reticent parents who would be discouraged from participating in meetings because of the presence of a rolling video camera. The affidavits of all four Board members contained the identical assertion that:

> "I voted for the [2000] resolution because I believed, and I believe, that videotaping our meetings will make them less 'open,' rather than more 'open.' I do not believe that anyone is better able than our Board to assess what will foster a free and open dialogue at our meetings in our District, and I do not see how the additional 'information' [the] petitioners may gain from videotaping, rather than audiotaping, our meetings, overcomes the negative consequences of that videotaping for our school community."

The Supreme Court dismissed the petition, concluding that while the Open Meetings Law protected the rights of citizens to *attend* public meetings of governmental bodies such as the Board, it did not confer upon the petitioners the right to

videotape the Board's meetings. Furthermore, the Supreme Court held that the 2000 Resolution did not constitute a "ban" on the videotaping of meetings. Rather, the Supreme Court found that the 2000 Resolution *permitted* videotaping, but subject to several conditions which the Supreme Court deemed reasonable. Thus, the Supreme Court sustained the 2000 Resolution and dismissed the proceeding. We reverse.

At the outset, we reject the conclusion of the Supreme Court that the 2000 Resolution does not preclude videotaping of Board meetings, but merely imposes reasonable conditions upon the right to do so. The 2000 Resolution unequivocally provides that the decision to permit meetings to be recorded rests in the exclusive discretion of the Board. It is uncontroverted that subsequent to the adoption of the 2000 Resolution, the Board has not permitted the petitioners to operate their video camera, and there is no indication in the record that the Board has otherwise undertaken any effort to allow any other individuals or entities to record or televise Board meetings. As implemented by the Board, the 2000 Resolution instituted an absolute prohibition against videotaping Board meetings.

The complete legislative declaration found at the beginning of the Open Meetings Law is:

> "It is essential to the maintenance of a democratic society that the public business be performed in an open and public manner and that the citizens of this state be fully aware of and *able to observe* the performance of public officials and attend and listen to the deliberations and decisions that go into the making of public policy. The people must be able to remain informed if they are to retain control over those who are their public servants. It is the only climate under which the commonweal will prosper and enable the governmental process to operate for the benefit of those who created it" (Public Officers Law § 100 [emphasis added]).

It is true, as the Board contends, there is no explicit command within the Open Meetings Law compelling the Board to permit its meetings to be recorded on videotape. However, an examination of the purpose and history of the law vis-à-vis technological advancements in electronic recording, leaves no doubt that a liberal interpretation of the Open Meetings Law permitting citizens to exercise their freedoms by recording the meetings of the Board and other democratic institutions, is wholly consonant with the legislative intent.

The Open Meetings Law was enacted in 1976 (L 1976, ch 511) in an attempt to overcome the "crisis of confidence in American politics occasioned by Watergate" (*Matter of Gordon v Village of Monticello,* 87 NY2d 124, 126-127 [1995]). It is this State's version of laws adopted nationwide, most commonly known as "Sunshine Laws" (*id.* at 127 n) which were intended to restore the public's faith in governmental bodies by encouraging them to conduct business in a public manner. New York's Open Meetings Law is to be liberally construed to effectuate the legislative purpose (*see Matter of Gordon v Village of Monticello, supra; see also Matter of Smith v City Univ. of N.Y.,* 92 NY2d 707 [1999]; *Matter of Goetschius v Board of Educ. of Greenburgh Eleven Union Free School Dist.,* 244 AD2d 552 [1997]).

There is not a wealth of case law in New York dealing with the issue of electronic recording of public governmental meetings. The first reported decision, which was from 1963 and which predated the enactment of the Open Meetings Law, was *Matter of Davidson v Common Council of City of White Plains* (40 Misc 2d 1053 [1963]). That decision upheld the right of the Common Council to bar a concerned citizen from using his audiotape recorder to record its meetings. The court noted that the Common Council already recorded its meetings and made recordings available for public inspection. The court held that pursuant to the White Plains City Charter, the Common Council possessed the legislative authority to regulate its own proceedings, and that its decision prohibiting additional recording of its public proceedings was not illegal.

The Board herein placed great reliance upon the *Davidson* decision. Despite the contrary holdings of several later cases (to be discussed *infra*), the Board asserts that *Davidson*'s recognition of the right of a governmental body to bar recording is in accord with the present state of the law insofar as the Open Meetings Law does not explicitly provide for a right to electronically record public meetings. We disagree.

The holding of *Davidson* is no longer viable for several important reasons. Initially, as noted, *Davidson* was decided in 1963, 13 years prior to the enactment of the Open Meetings Law. Both technological advances and notions of a more open democratic process have rendered *Davidson* a quaint anachronism. Moreover, *Davidson* has effectively been overruled.

In *Mitchell v Board of Educ. of Garden City Union Free School Dist.* (113 AD2d 924 [1985]), this Court was faced with

a controversy identical to that raised in *Davidson*, and effectively indistinguishable from that presented in the matter at bar. The Garden City Board of Education had adopted a resolution prohibiting the electronic recording of public meetings. In *Mitchell*, it was audiotape recording that was in controversy. This Court affirmed the judgment of the Supreme Court, Nassau County, striking down the Board's prohibitory resolution, under a rationale that is directly applicable to the instant matter.

This Court held that "the unsupervised recording of public comment by portable, hand-held tape recorders is not obtrusive, and will not distract from the true deliberative process of the body" (*id.* at 925). The *Mitchell* Court distinguished *Davidson*, in implicit recognition that the advances in technology from 1963, when *Davidson* was decided, until 1985, when *Mitchell* was decided, rendered *Davidson*'s rationale obsolete.

Furthermore, the *Mitchell* Court rejected the very arguments advanced by the Board herein, that the recording of meetings inhibits the democratic process. The Court stated:

> "Those who attend [public] meetings, and who decide to freely speak out and voice their opinions, fully realize that their comments and remarks are being made in a public forum. The argument that members of the public should be protected from the use of their words, and that they have some sort of privacy interest in their own comments, is * * * wholly specious" (*Mitchell v Board of Educ. of Garden City Union Free School Dist., supra* at 925).

Like the *Mitchell* Court, we are not persuaded that the videotape recording of Board meetings will truly inhibit the democratic process. While the Board adduced affidavits from three parents who expressed their fears of being videotaped at meetings, the Board may not hold the law hostage to the personal fears of a few individuals. The petitioners' camera, mounted on a tripod at the rear of the room, is not obtrusive. It is as innocuous as an audiotape recorder to which these same affiants have voiced no objection.

The law has embraced the undeniable fact that modern electronic recording devices are silent observers of history. Video cameras provide the most accurate and effective way of memorializing local democracy in action. To sustain the 2000 Resolution would diminish democratic freedom. The Board must recognize that its camera ban risks a "loss of public trust

where it appears that government has something to hide" (*People v Ystueta,* 99 Misc 2d 1105, 1108 [1979]).

We note that the petitioners solicited the opinion of the Executive Director of the New York Department of State Committee on Open Government (hereinafter the Committee), who opined that the 2000 Resolution was violative of the Open Meetings Law. A similar prior opinion prompted the Supreme Court, Franklin County, to vacate a similar recording ban in *Matter of Peloquin v Arsenault* (162 Misc 2d 306 [1994]). The Board suggests that this Court should not be persuaded by the Committee opinion herein. Certainly this Court is not bound to honor the Committee's opinion (*see Matter of Buffalo News v Buffalo Enter. Dev. Corp.,* 84 NY2d 488 [1994]; *Matter of John P. v Whalen,* 54 NY2d 89 [1981]). However, in this case we recognize the intrinsic merit of the Committee's opinion and thus we are inclined to give it the credit it deserves (*see Kwasnik v City of New York,* 262 AD2d 171, 172 [1999]; *Matter of Miracle Mile Assoc. v Yudelson,* 68 AD2d 176 [1979]).

The overwhelming weight of authority from other states likewise supports our holding herein. In *Hain v Board of School Directors of Reading School Dist.* (163 Pa Commw 479, 641 A2d 661 [1994]), the Commonwealth Court of Pennsylvania struck a school board rule prohibiting the videotape recording of public meetings as violative of Pennsylvania's Sunshine Act. In *Maurice Riv. Twp. Bd. of Educ. v Maurice Riv. Twp. Teachers Assn.* (193 NJ Super 488, 475 A2d 59 [1984], *affg* 187 NJ Super 566, 455 A2d 563 [1982]), the New Jersey Superior Court, Appellate Division, similarly held that a school board could not enact a blanket prohibition against videotaping of public meetings, as such a rule violated New Jersey's Open Public Meetings Act (NJ Stat Ann § 10:4-6 *et seq.; see also Sudol v Borough of N. Arlington,* 137 NJ Super 149, 348 A2d 216 [1975]).

In *Belcher v Mansi* (569 F Supp 379 [1983]), the United States District Court for the District of Rhode Island struck a school board rule banning tape recording as violative of Rhode Island's Open Meetings Law. Significantly, the Rhode Island statute opened with a Legislative declaration much like that of New York's, broadly hailing that "[i]t is essential to the maintenance of a democratic society that public business be performed in an open and public manner" (RI Gen Laws § 42-46-1; *Belcher v Mansi, supra* at 382). From this statement of policy, the court was persuaded that electronic recording of meetings was consonant with the purpose of the statute (*ac-*

*cord Nevens v City of Chino,* 233 Cal App 2d 775, 44 Cal Rptr 50 [1965]). Additionally, the Attorneys General of Washington (1998 Wash Op Atty Gen No. 15, 1998 WL 873040, 1998 Wash AG LEXIS 56), Kentucky (1996 Ky Op Atty Gen 96-OMD-143, 1996 WL 368830, 1996 Ky AG LEXIS 31), Florida (1991 Fla Op Atty Gen 87 AGO 91-28, 1991 WL 528159, 1991 Fla AG LEXIS 28), Ohio (1988 Ohio Op Atty Gen 415 No. 88-087, 1988 WL 429546, 1988 Ohio AG LEXIS 81), Indiana (1983-84 Ind Op Atty Gen 117 No. 84-9, 1984 WL 60058, 1984 Ind AG LEXIS 5) and Wisconsin (66 Wis Op Atty Gen 318 OAG 97-77, 1977 WL 36174, 1977 Wis AG LEXIS 9) have opined that prohibitions on electronic recording of public governmental meetings are inconsistent with each state's Sunshine Law.

*Wright v City of Lawrence* (21 Mass App Ct 343, 486 NE2d 1151 [1985]), upon which the Board relies, is readily distinguishable. The court in *Wright* dismissed a suit for a declaratory judgment challenging a recording ban due to the inadequacy of the record, the imprecision of the plaintiff's Open Meetings Law claims, and the plaintiff's misguided attempts therein to frame the issue of the city council's prohibition on videotaping as one of constitutional dimension. We agree that the First Amendment of the United States Constitution does not guarantee the right to videotape governmental meetings (*see Whiteland Woods, L.P. v Township of W. Whiteland,* 193 F3d 177 [3d Cir 1999]; *Johnson v Adams,* 629 F Supp 1563 [US Dist Ct, ED Tex 1986]). However, *Wright* does not support the Board's argument herein, as *Wright* did not decide the Open Meetings Law issue on the merits. Significantly, however, *Wright* posited that "There may come a time when sound cameras will be so thoroughly accepted, and any idea that they could distort or prejudice deliberation or offend decorum so anachronistic, that to bar them would seem the equivalent of prohibiting pencil and paper" (21 Mass App Ct at 347, 486 NE2d at 1153-1154). The *Wright* court rejected the notion that video cameras had achieved such ubiquity in 1985. Today, 17 years later, C-Span and C-Span 2 broadcast from the Capitol, and local government meetings are routinely aired on public access cable television. While video cameras may not yet have achieved parity with pen and paper at the local level, we discern no legitimate reason to prohibit them from public meeting rooms of school boards.*

---

* The Board's citation to *Combined Communications Corp. v Finesilver* (672 F2d 818 [10th Cir 1982]) is also unavailing as that case dealt with a

This is not to say that the Board lacks any authority to regulate the use of cameras at its meetings. It certainly has the authority to impose reasonable regulations upon the public's use of video cameras at its public meetings so as to ensure that cameras do not genuinely interfere with the work at hand. What the Board may not do, is prohibit the use of cameras outright, as the 2000 Resolution has effectively done. Accordingly, the judgment is reversed insofar as appealed from, the petition is granted, and the resolution is annulled.

The Board's remaining contentions are without merit.

McGINITY, J. (dissenting). A board of education has broad power to adopt rules for its government as shall seem proper in the discharge of its duties (*see* Education Law § 1709 [1]). At issue herein is the right of a local school board, consistent with its powers, to adopt reasonable rules for its government and operations. Specifically, does a school board resolution prohibiting videotaping of its public meetings subject to certain conditions violate this state's policy to ensure openness in government pursuant to the Public Officers Law? The Supreme Court determined that such resolution did not. The majority, however, holds that such a resolution is violative of the Open Meetings Law (*see* Public Officers Law § 100). I disagree and would, therefore, affirm the judgment insofar as appealed from.

At the outset, it is important to note the backdrop of the instant proceeding. In recent years, the respondent Shoreham-Wading River Central School District (hereinafter the District) has been rocked with serious financial issues stemming from the fiscal consequences caused by the closure of the Shoreham nuclear power plant. As a result of such closure, the District has been required to deal with significant loss of revenues and struggled to construct a fiscally responsible budget. Naturally, there has been a marked difference of opinion among the residents manifested at tumultuous meetings of the local school board as to how the District is best able to address the shortfall.

As noted by the majority, the instant litigation arises from the petitioners' attempt to videotape school board meetings in July 2000. Initially rebuffed, the petitioners did, indeed, subsequent thereto, videotape school board proceedings. However, in October 2000, the Board of Education (hereinafter the Board) passed the subject resolution, inter alia, restricting the right of attendees to record the meetings and reserving the

---

rule barring media coverage of judicial proceedings that were subject to non-televised press coverage.

right to videotape meetings to itself. The stated rationale for the Board's resolution was to promote frank and open discussion of issues, inasmuch as many district residents had expressed reservations to the Board at being videotaped and possible misuse thereof. Unable to record the meetings on videotape, the petitioners commenced the instant proceeding for a judgment annulling the subject resolution. The petitioners assert that the resolution violates the Open Meetings Law by prohibiting the public from physically videotaping public school board meetings.

Assuming arguendo that the subject resolution constitutes a prohibition on the videotaping of school board meetings, in my view, such a prohibition does not run afoul of the Open Meetings Law. Section 100 of the Open Meetings Law (Public Officers Law art 7) states in pertinent part that:

> "[i]t is essential to the maintenance of a democratic society that the public business be performed in an open and public manner and that the citizens of this state be fully aware of and able to observe the performance of public officials and attend and listen to the deliberations and decisions that go into the making of public policy."

In furtherance of this legislative declaration, section 103 (a) provides that "[e]very meeting of a public body [except executive sessions] shall be open to the general public." The cornerstone of the Open Meetings Law is that the decisions made by public bodies should be made publicly (*see e.g. Matter of Gernatt Asphalt Prods. v Town of Sardinia,* 87 NY2d 668 [1996]). There is, however, no statutory requirement imposed on a public body to allow citizens attending its meetings to videotape board meetings. It is a cardinal principle of statutory construction that a statute " 'must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise' " (*Parochial Bus Sys. v Board of Educ. of City of N.Y.,* 60 NY2d 539, 548-549 [1983], quoting *Lawrence Constr. Corp. v State of New York,* 293 NY 634, 639 [1944]). Further, where a "law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 240; *see also Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 41 NY2d 205, 208-209 [1976]). Thus, in my

view, the subject resolution is in harmony with the requirements of the Public Officers Law.

This conclusion is particularly bolstered by the Legislature's express refusal to amend Public Officers Law § 103 so as to allow any meeting of a public body to be recorded, broadcast, or photographed pursuant to the rules and regulations adopted by the public body (*cf.* 1999 NY Assembly Bill A 808). Mindful of the opinion of the Executive Director of the New York Department of State Committee on Open Government who opined that the subject resolution was violative of the Open Meetings Law, nevertheless, such advisory opinions are entitled to carry such weight as results from the strength of the reasoning they contain (*see Matter of John P. v Whalen,* 54 NY2d 89, 96 [1981]). Here, a plain reading of the Open Meetings Law demonstrates that there is no requirement imposed on a public body to permit videotaping of its meetings. Indeed, the legislative intent appears to be to the contrary. In my view, the Board has fully complied with the mandates of the Open Meetings Law and, pursuant to its powers to regulate its own affairs and operations (*see* Education Law § 1709), has permissibly regulated the videotaping of its public meetings. In this regard, *Mitchell v Board of Educ. of Garden City Union Free School Dist.* (113 AD2d 924 [1985]) is distinguishable. In *Mitchell,* at issue was the use of portable, hand-held tape recorders to record public meetings. This Court determined that the use of such unobtrusive tape recording devices at public meetings should not be prohibited. However, there is a marked difference between videotaping proceedings and audiotaping, and the Board had sufficient justification in recognizing such distinction. Further, the laudatory goals of the Open Meetings Law are not in any way undermined by the Board's resolution, i.e., the right of citizens to be fully informed of the deliberations and decisions of a public body.

Accordingly, the judgment appealed from should be affirmed insofar as appealed from.

Santucci, J.P., and Altman, J., concur with S. Miller, J.; McGinity, J., dissents and votes to affirm the judgment insofar as appealed from, in a separate opinion.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, the petition is granted, the resolution is annulled, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings concerning attorneys' fees pursuant to Public Officers Law § 107 (2).