OPINION OF THE COURT
Jeffrey S. Brown, J.
Petitioners, News 12 Company and Newsday LLC, seek a judgment, pursuant to CPLR article 78, 3001, article 7 of the Public Officers Law, Education Law § 414 (1) (c), the First Amendment to the United States Constitution, and article I, § 8 of the New York State Constitution, declaring that respondents, Hempstead Public Schools Board of Education and Susan Johnson, acted contrary to law and in an arbitrary and capricious manner by excluding petitioners’ reporters’ cameras from their public meeting on July 20, 2015; preliminarily and permanently enjoining respondents from prohibiting petitioners from attending future Hempstead Public Schools Board of Education meetings or any other meeting open to the public and using their cameras to photograph or record the same; directing respondents to participate in a training session on their Open Meetings Law obligations; and awarding petitioners their costs and attorneys’ fees.
By way of background, on July 16, 2015, the Hempstead School District’s high school and junior high school were designated by the New York State Education Department as “persistently struggling” and “struggling,” respectively. Consequently, the schools were placed in receivership with respondent Johnson as the named receiver. If the changes issued by the superintendent do not result in significant improvement within one year for the high school and two years for the junior high school, the schools may be subject to a takeover by an independent receiver. The foregoing designations and/or procedures were codified in Education Law § 211-f (1) (b), and they became effective in April 2015.
*481 According to the petitioners, under the foregoing statute, Johnson was vested with authority to make significant changes without the Board’s approval. The court takes judicial notice that under the receivership law, a school receiver is granted new authority to, among other things, develop a school intervention plan; convert schools to community schools providing wraparound services; expand the school day or school year; and remove staff and/or require staff to reapply for their jobs in collaboration with a staffing committee (see New York State Department of Education, Commissioner Elia Identifies 144 Struggling and Persistently Struggling Schools to Begin Implementation of School Receivership in New York State, http://www.nysed.gov/news/2015/commissioner-elia-identifies-144-struggling-and-persistently-struggling-schools-begin [last updated July 16, 2015]).
Regarding schools that are “struggling,” such schools will be given two years under a “superintendent receiver” to make demonstrable improvement or the district will be required to appoint an independent receiver and submit the appointment for approval by the Commissioner. “Independent receivers can be an individual, a not-for-profit organization, or another school district, have sole responsibility to manage and operate the school and have all of the enhanced authority of a school receiver” (see New York State Department of Education, Commissioner Elia Identifies 144 Struggling and Persistently Struggling Schools to Begin Implementation of School Receivership in New York State, http://www.nysed.gov/news/2015/ commissioner-elia-identifies-144-struggling-and-persistently-struggling-schools-begin [last updated July 16, 2015] [emphasis added]).
The petitioners claim that the Board and Superintendent held a “special public meeting” on July 20, 2015 at the Hemp-stead high school. Board member Maribel Toure attempted to escort the petitioner journalists and/or reporters into the building, but their access was blocked by security guards, who refused to permit their entry with their camera equipment. Toure stated that she informed Superintendent Johnson that all members of media must be allowed into the meeting, but Johnson still refused to permit their access to the meeting. By the time the petitioners were allowed to enter, the meeting was over. When the Newsday photographer attempted to take pictures, the attendees were rerouted to a larger new venue in the high school after the intended site could not accommodate the crowd, and the photographer was ordered off the premises.
*482 The respondents counter the “special public meeting” was, in actuality, a “community forum” for purposes of discussing the “transformation” plans for the School District’s high and junior high schools. There was no public business being conducted and/or discussed, and a quorum of the School Board was not in attendance. Furthermore, the press was not excluded from attending the meeting, only their use of cameras and media equipment during the meeting was prohibited.
The relative flier and/or announcement, captioned with the Hempstead Public Schools logo, contained the following wording:
“Community Forum
“Hempstead Union Free School District
“TRANSFORMATION PLANS . . .
“Come out to learn about the
“• ABGS Middle School
“• Hempstead High School
“Transformation Plans
“ ‘Failure is no longer an option.’ ”
Article 78 provides in relevant part,
“The only questions that may be raised in a proceeding under this article are:
“1. whether the body or officer failed to perform a duty enjoined upon it by law; or . . .
“3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion.” (CPLR 7803.)
Under the arbitrary and capricious standard of review of CPLR article 78, the respondents must examine relevant data and articulate satisfactory explanation for their action including a rational connection between facts found and the choice made (Public Citizen, Inc. v Mineta, 340 F3d 39 [2d Cir 2003]; Matter of Cohen v State of New York, 2 AD3d 522 [2d Dept 2003]; Matter of Tockwotten Assoc. v New York State Div. of Hous. & Community Renewal, 7 AD3d 453 [1st Dept 2004]).
A primary difference between CPLR article 78 proceedings and declaratory judgment actions is the presence or absence of a judicially-imposed remedial order. In a declaratory judgment action, the court does not direct a party to do an act or refrain from doing an act. In a declaratory judgment action, the court merely declares the prevailing party’s rights with respect to *483 the matter in controversy for the purpose of guiding future conduct, and then, as explained by Professor David Siegel, “let[s] things go at that” (Siegel, NY Prac § 436 at 738 [4th ed]; CPLR 3001). By contrast, in a CPLR article 78 proceeding, the court affirmatively directs a party, if unsuccessful, to perform an act or refrain from doing so (see Matter of Dandomar Co., LLC v Town of Pleasant Val. Town Bd., 86 AD3d 83 [2d Dept 2011]). Here, the petitioners seek hybrid relief.
The relevant sections of Public Officers Law, article 7, § 102, “Definitions,” is provided herein in relevant part:
“1. 'Meeting5 means the official convening of a public body for the purpose of conducting public business.
“2. ‘Public body’ means any entity, for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function for the state or for an agency or department thereof, or for a public corporation as defined in section sixty-six of the general construction law . . . .”
In addition, Public Officers Law § 103, “Open meetings and executive sessions,” provides that “(a) Every meeting of a public body shall be open to the general public.” It further provides:
“(d) [As added by L.2010, c. 43. See, also, subd. (d) above.] 1. Any meeting of a public body that is open to the public shall be open to being photographed, broadcast, webcast, or otherwise recorded and/or transmitted by audio or video means. As used herein the term ‘broadcast’ shall also include the transmission of signals by cable.
“2. A public body may adopt rules, consistent with recommendations from the committee on open government, reasonably governing the location of equipment and personnel used to photograph, broadcast, webcast, or otherwise record a meeting so as to conduct its proceedings in an orderly manner. Such rules shall be conspicuously posted during meetings and written copies shall be provided upon request to those in attendance.”
More importantly, Education Law § 211-f (1) (c) (iv) provides the following:
“The district shall provide notice to parents and guardians of the students of the school which may be placed into receivership pursuant to this subdivision and provided further that the district or *484 the commissioner shall hold a public meeting or hearing for purposes of discussing the performance of the school and the construct of receivership.”
As to the attached case submitted by the petitioners for evidentiary support, Mitzer v Goshen Cent. Sch. Dist. Bd. of Educ., it is distinguishable from the case at bar. There, the issue involved a meeting of the Board and its executive meeting with its counsel regarding the drafting of responses to a legal complaint. The court noted that there was no vote to enter executive session in three instances, in violation of the Open Meetings Law. The Board failed to make an adequate showing that the sessions were held for the permitted statutory purposes. This was clearly a public meeting for public purpose.
This court is guided by Matter of Orange County Publs., Div. of Ottaway Newspapers v Council of City of Newburgh (60 AD2d 409 [2d Dept 1978]). There, the Court interpreted the meaning of “public business” under article 7 of the Public Officers Law and the word “meeting” within the meaning of the Open Meetings Law. Meetings under the Open Meetings Law, include the gathering or meeting of a public body whenever a quorum is present for the purpose of transacting public business, whether or not a vote of the members of the public body is taken. There, the Court was to determine whether the “work session” of the respondent council from which the petitioners’ reporters were barred was a meeting as set forth in Public Officers Law and Open Meetings Law.
The Orange County court reviewed the statutory objectives and its intent. The essential purpose of the Open Meetings Law is that public business “be performed in an open and public manner and that the citizens of this state be fully aware of and able to observe the performance of public officials and attend and listen to the deliberations and decisions that go into the making of public policy” (see id. at 412).
As already stated herein, under Public Officers Law, the word “meeting” is defined as “the official convening of a public body for the purpose of conducting public business” (emphasis added). This definition contains several words of limitation such as “public body,” “official convening” and “conducting public business.” General Construction Law § 41 defines the requirement of a quorum in terms of the performance of a public duty. The court can equate the performance of a public duty with the conducting of public business.
The Orange County court, concluded that the Open Meetings Law’s legislative intent interpreted the conducting of business *485 as not being limited, to the taking of an official vote, but extended to “peripheral discussions surrounding the vote” (see Orange County Publs., Div. of Ottaway Newspapers, 60 AD2d at 415).
In light of the foregoing, the petitioners’ reliance on Matter of Goodson Todman Enters. v City of Kingston Common Council (153 AD2d 103 [3d Dept 1990]) is somewhat misplaced. The court acknowledges that the subject meeting may indeed be an informal conference where the topic of discussion would arise at a regular Board meeting. However, the petitioners must consider the Goodson Todman Enters, court’s determination in its entirety — “informal conferences, agenda sessions and work sessions do invoke the provisions of the statute when a quorum is present and when the topics for discussion and decision are such as would otherwise arise at a regular meeting” (id. at 105 [emphasis added]).
Notwithstanding the dispute as to whether a quorum was present, the subject meeting was clearly a response to the statutory requirement under Education Law § 211-f (1) (c) (iv), requiring that a public meeting be held where the community, including the parents and guardians of the students in the District, were to be so informed as to the recent designations of the subject schools and the plans regarding the same. Although the Public Officers Law and its Open Meetings Law arguably do not apply to the case at bar, the recently enacted statutory provision renders the subject meeting as a public meeting.
In considering the permitting of the press as members of the general public to public meetings, Education Law § 414 (1) (c) provides, in relevant part, that
“[s]choolhouses and the grounds connected therewith and all property belonging to the district shall be in the custody and under the control and supervision of the trustees or board of education of the district. . . . The trustees or board of education of each district may . . . permit the use of the schoolhouse and rooms therein, and the grounds and other property of the district, when not in use for school purposes or when the school is in use for school purposes if in the opinion of the trustees or board of education use will not be disruptive of normal school operations, for any of the following purposes: . . .
*486 “(c) For holding social, civic and recreational meetings and entertainments, and other uses pertaining to the welfare of the community; but such meetings, entertainment and uses shall be nonexclusive and shall be open to the general public” (emphasis added).
As the petitioners rely on the foregoing, the court finds the case of Hone v Cortland City School Dist. (985 F Supp 262 [ND NY 1997]) instructive. There, the court considered the allegations of constitutional violations by a sports reporter, where the respondent district restricted his use of video or recording equipment when covering the school’s sports events, based on conduct he exhibited during the course of performing his duties.
While the Hone court, as does this court, appreciated the constitutional rights providing freedom of the press, the First Amendment does not guarantee unlimited access to government-owned property for purposes of expression and, depending on the nature of the property, the government may regulate access. The Hone court, while citing Cornelius v NAACP Legal Defense & Ed. Fund, Inc. (473 US 788 [1985]), applied the three-prong test for analyzing governmental restrictions on expressive activity.
The first prong requires a determination of whether the speech in question is protected by the First Amendment; the second prong requires an identification of the nature of the forum for the speech; and the third requires an assessment of whether the government’s exclusion of the speech from the particular forum is justified. Additionally, the First Amendment jurisprudence recognizes three types of speech fora: (1) the traditional public forum; (2) the public forum created by government designation; and (3) the nonpublic forum.
In traditional public spaces, such as parks and streets, which have been held in trust for the use of the public and have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions, the rights of the State to limit expressive activity are sharply circumscribed. For the State to enforce a content-based exclusion, it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end (see id.).
A forum that is created by government designation, is when government opens a nonpublic forum but limits the expressive activity to certain kinds of speakers or to the discussion of *487 certain subjects. In such a forum, the government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre. A State may reserve a nonpublic forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker’s view.
In other words, the second category refers to public property which the State has opened for use by the public as a place for expressive activity. The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place. Although a State is not required to indefinitely retain the open character of the facility, as long as it does so, it is bound by the same standards as apply in a traditional public forum. Reasonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest (see Perry Ed. Assn. v Perry Local Educators’ Assn., 460 US 37 [1983]). The foregoing applies to the use of the Hempstead high school for the subject meeting.
In Hone, the high school’s forum where the plaintiff reporter was seeking access, was an area where instructional education was being provided. In that particular case, where a school is not made a public forum, “[t]he public is not invited to use its facilities as a soapbox.” (Hone, 985 F Supp at 271 [internal quotation marks omitted].) There, the defendants made no reference whatsoever to the content of plaintiff’s speech, but only to its context. Further, the Hone plaintiff could utilize other modes of communication. In sum, the defendant’s restrictions were reasonable, and they did not violate the plaintiff’s free speech rights (see Hone, 985 F Supp 262).
Here, the Hempstead Public School District’s public school and/or property, when being used for school instruction or other school activities, does not permit members of the general public to situate themselves therein at will and participate in a free expression of their views. However, Johnson opened the nonpublic forum for a convocation of the general public and/or community to discuss a matter of public interest. Although the subject was relative to issues concerning the subject schools, the forum, contrary to the respondent’s argument, was not being used for school purposes.
*488 In addition, while the protection of freedom of the press is not absolute, the burden of demonstrating a condition which warrants a prior restraint is indeed a heavy one (see Quinn v Johnson, 51 AD2d 391 [1st Dept 1976]). Also, the press does not enjoy an unfettered right of access for news gathering. Moreover, in the present context the press’ right of access must be balanced against the countervailing pedagogical interests of the school. Courts have “repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.” (See Tinker v Des Moines Independent Community School Dist., 393 US 503, 507 [1969]; Hone, 985 F Supp 262.)
In reviewing the authority relied upon by the petitioners, particularly, Matter of Csorny v Shoreham-Wading Riv. Cent. School Dist. (305 AD2d 83 [2d Dept 2003]), this court finds it distinguishable from the instant case. There, the Court considered the resolution that banned the use of cameras outright, at its board meetings. While the Court held that the respondent was prohibited from issuing such a blanket prohibition, it also noted that the board certainly had the authority to impose reasonable regulations upon the public’s use of video cameras at its public meetings to ensure that cameras do not genuinely interfere with the work at hand.
The New York State Committee on Open Government recently addressed the issue where a school board was considering the adoption of a policy that banned the use of video equipment during its meetings. The Committee referenced the case, Matter of Peloquin v Arsenault (162 Misc 2d 306 [1994]), and it opined that a public body has the ability to adopt reasonable rules concerning its proceedings. In Peloquin, the word “obtrusive” was used to justify the banning of the video recording equipment, so the court noted various dictionary definitions for “obtrusive” such as “unduly prominent,” “undesirably prominent,” or “intrusive, undesirably or unattractively noticeable.” The respondent municipality argued that permitting such equipment in the meeting would certainly meet the foregoing criteria.
Here, it can be inferred, judging by the spate of critical, prejudicial, immaterial, irrevelant, and overall negative News-day articles attached to the instant petition as exhibits, that there is an adversarial relationship between the respondents and the petitioners. The court finds it interesting that the *489 petitioners pointed out that Maribel Toure escorted them into the building for the meeting, and that she informed Johnson that she must allow the petitioners entry into the meeting. Consequently, it appears that the respondents’ intent may have been to avoid the creation of a “media circus” atmosphere, and the ensuing negative press; however, they failed to make any such argument in their papers.
Generally, courts have determined that certain recording equipment, particularly handheld recorders, were unobtrusive and certain video equipment may or may not be obtrusive (see Mitchell v Board of Educ. of Garden City Union Free School Dist., 113 AD2d 924 [2d Dept 1985]). As already stated herein, and as determined by the Committee on Open Government, a blanket ban on all cameras and camcorders when the sole justification is a distaste for appearing in the public media is insufficient (see Peloquin, 162 Misc 2d 306). While the actions of the instant respondents may not be a blanket ban on video or recording equipment from meetings, the overall justification for the barring of such equipment appears to be based on a general distaste for the petitioners’ coverage of the respondents’ administration of the District. While understandable, it is not a sufficient reason.
In consideration of the respondent’s contention regarding Superintendent Johnson’s authority as it relates to the Board, Education Law § 1711 provides:
“1. The board of education of any union free school district may appoint a superintendent consistent with the provisions of this section.
“2. Such superintendent shall possess, unless otherwise specified by the by-laws of the board of education, the following powers and be charged with the following duties:
“a. To be the chief executive officer of the school district and the educational system, and to have the right to speak on all matters before the board, but not to vote.
“b. To enforce all provisions of law and all rules and regulations relating to the management of the schools and other educational, social and recreational activities under the direction of the board of education.”
Yet, the petitioners cite the recent State designation where Johnson, as the receiver, is empowered to act without the *490 authority of the Board. The petitioners simply cannot have it both ways. This court, in applying the recent designation of the State, has determined that Johnson had authority to act without the Board’s consent in regard to calling the subject meeting.
The court does not find that the respondent is a repeat violator of the offenses alleged in the petition. The newspaper stories, on which the petitioners apparently rely for support of blatant conduct by the respondents, are, as already stated herein, inapplicable, and hardly indicative of any prior conduct. Generally, where evidence indicates that a respondent has repeatedly violated the Open Meetings Law, such may justify an award of attorney’s fees (see Matter of Gordon v Village of Monticello, 87 NY2d 124 [1995]). That is not the case in the instant matter. Further, there is no irreparable harm, since petitioners were able to gather the information and report the news relative to the subject meeting in their medium.
Further, preliminarily and permanently enjoining respondents from prohibiting petitioners from attending future Hemp-stead Public Schools Board of Education meetings or any other meeting open to the public and using their cameras to photograph or record the same, is not appropriate. However, the court will mandate that Johnson be required to attend a training session relative to Open Government. The court has considered the petitioners’ remaining arguments and has determined that they are unavailing.
Accordingly, the petition is granted as only against respondent, Johnson, in that she violated Education Law §§ 414 (1) (c) and 211-f (1) (c) (iv). The petition is denied as to violations of the Public Officers Law, Open Meetings Law, the First Amendment to the United States Constitution, and article I, § 8 of the New York State Constitution. The petition is denied as to granting a preliminary and permanent injunction. The petition is denied as to the awarding of legal fees and costs to the petitioners. However, the court directs that Johnson be required to participate in a training session on Open Meetings Law conducted by the New York State Committee on Open Government. The petition, as to the Hempstead Public Schools Board of Education, is denied in its entirety.
All applications not specifically addressed herein are denied.